# IN THE SUPREME COURT OF IOWA

No. 07–1707

Filed May 29, 2009

**STATE OF IOWA,**

    Appellant,

vs.

**LUIS FERNANDO ORTIZ,**

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, Gary E. Wenell, Judge.

The defendant seeks further review of a court of appeals decision reversing a district court decision suppressing the defendant's statements made during an interrogation by the police. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AND CASE REMANDED.**

Thomas J. Miller, Attorney General, Jean C. Pettinger and Mary Tabor, Assistant Attorneys General, Patrick Jennings, Woodbury County Attorney, and Jill R. Pitsenbarger, Assistant County Attorney, for appellant.

Shelley Goff, Ruston, Louisiana, for appellee.

**WIGGINS, Justice**.

The police brought a suspect to the police station for questioning. The suspect spoke little or no English. After signing a Spanish-language "voluntary waiver of rights," he stated he did not understand his rights. Then a Spanish-speaking officer read the suspect a Spanish *Miranda* advisory. The suspect waived his rights and confessed to inappropriate contact with a child. The State charged the suspect with lascivious acts with a child. Prior to trial, the defendant filed a motion to suppress his statements, alleging he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. The district court granted the motion, and the State appealed. The court of appeals reversed, finding Ortiz knowingly, intelligently, and voluntarily waived his rights. Because we agree with the district court that the State failed to prove by a preponderance of the evidence the defendant knowingly and intelligently waived his *Miranda* rights, we vacate the decision of the court of appeals, affirm the judgment of the district court, and remand the case for further proceedings.

### I. Background Facts and Proceedings.

On July 15, 2006, the Sioux City Police Department received a report from a woman asserting that Luis Ortiz, who was working on various remodeling projects in her home, had forced her seven-year-old daughter to touch his penis. Because Ortiz's address was unknown, Detective Bertrand asked the woman to arrange for Ortiz to come to her home. On that date, Bertrand went to the woman's home to attempt to speak to Ortiz. Because Bertrand was aware Ortiz spoke little or no English, he brought Spanish-speaking Special Agent Ricardo Rocha of the Federal Immigration and Customs Enforcement Agency with him to interpret. When Ortiz arrived at the house, Bertrand identified himself

as a police officer and asked Ortiz, with Rocha translating, if he would be willing to accompany him to the police station for an interview. At the time of this request, Bertrand's badge and gun were on his waist and in full view of Ortiz. Rocha explained to Ortiz that he was not under arrest and could refuse to go. Ortiz agreed without any reluctance. Bertrand did not give Ortiz the choice of driving his own vehicle to the station. Rocha was not able to accompany Bertrand and Ortiz to the station because he had other things to do that morning. Bertrand dropped Rocha at his office and then took Ortiz to the station.

At the station, Bertrand took Ortiz to the second floor, using a key card to access the elevator. Bertrand put Ortiz in an interview room equipped with recording capabilities. Bertrand left Ortiz alone in the room for approximately thirteen minutes before he returned to the room with Salvador Sanchez, a Sioux City officer, who spoke Spanish. The interview began with Sanchez interpreting for Bertrand and Ortiz. The relevant substance of the interview as translated into English by a person certified as a translator by the United States District Court is as follows:

Sanchez: How are you, friend?

Ortiz: Fine.

Bertrand: Okay, uh, before I can begin, I need to let you read your rights. It's part of the policy.

Sanchez: Questions. Can you read them?

Ortiz: Uh-huh.

Sanchez: Yeah?

Sanchez: [speaking in a low voice to Bertrand]

Bertrand: Yeah. [in response to Sanchez]

Sanchez:  [speaking in a low voice to Bertrand]

Bertrand:  Uh-huh.

08:27:21:  [Sanchez leaves the interview cubicle]

08:28:06:  [L. Ortiz signed the waiver]

Bertrand:  Do you understand your rights?

Ortiz:  But, what are my rights?

Bertrand:  Okay, uh, [makes physical gesture to wait and then looks at the door through which Sanchez left a few minutes ago].  Uh, we'll wait, we'll wait.

Ortiz:  [shakes head affirmatively]

Bertrand:  Your license.

Ortiz:  Uh-huh.  [places left hand in front left pocket to retrieve wallet and remove license to hand to Bertrand]

08:28:55:  [Sanchez reenters the interview cubicle]

Bertrand:  How are you doing?

Sanchez:  Did you understand what you read?

Ortiz:  He is telling me the rights, but, what are they, what are they?

Sanchez:  I am going to read them to you again.

Ortiz:  Uh-huh.

Sanchez:  Okay?  [Sanchez takes a paper and starts to read from it]  I have reading [*sic.*] the statement of . . .

[At 08:28:21 Sanchez puts down the paper the witness had signed and appeared to pull out his own reference source]

Sanchez:  Statement of rights.

Ortiz:  Uh-huh.

Sanchez:  Before asking some questions, you have to understand the following.

Ortiz:  Uh-huh.

Sanchez: Okay? You have the right to remain silent. Anything you say can be used against you in the Court. You have the right to consult with an attorney before asking questions and have this attorney present during the questioning.[1] If you cannot pay for the services of an attorney, one will be [unintelligible] to you, if you so desire. You understand you [*sic.*]. [Sanchez looks at witness apparently waiting for an answer]

The original waiver signed by Ortiz was written in Spanish. It translates as follows:

**VOLUNTARY WAIVER OF RIGHTS**
(WAIVER OF RIGHTS)

I have read the declaring [*sic.*] of the [non-word] [*sic.*] upon which I am noticed of my rights on [*sic.*] the constitution and the legal [*sic.*] and I completely understand what my rights are. I have received the opportunity to use the telephone to notify an attorney or individual from my family. I agree to answer an [*sic.*] questions and make an [*sic.*] statement. I know exactly what I am doing and I am doing so as a volunteer [*sic.*] and underneath [*sic.*] my own [*sic.*] will. I do not want to consult with an attorney and I don't want to have an attorney be witnessed [*sic.*] here to inform me of my rights. I have not received any promise of immunity of any other type and they have not used any physically [*sic.*] force or pressionment [*sic.*] of any to force me to make a statement.

After Ortiz twice stated he did not understand his rights contained in the waiver he signed, Sanchez attempted to read from the signed waiver. He felt uncomfortable reading the warnings from the waiver form and pulled a copy of the *Miranda* warnings translated in Spanish used by the Federal Drug Enforcement Agency. After receiving these warnings, Ortiz responded that he understood. Sanchez then stated, "Do you have

---

[1]The State contends the English translation of this sentence is "You have the right to consult with an attorney before *making* any questions and have said attorney present during the interview" rather than "You have the right to consult with an attorney before *asking* questions and have this attorney present during the questioning." We believe the translation by the person certified by the United States District Court, interpreting the sentence using the word "asking," is more credible. This discrepancy, however, does not have a bearing on the ultimate outcome of this case.

questions right now?" Ortiz replied, "No. Not right now. I want to know [unintelligible]." Sanchez appeared to cut off the rest of Ortiz's answer by stating, "He understood his rights. I asked him if he has any questions, he says he knows what is going on." Bertrand then began to interrogate Ortiz. At no time during the interview at the station did Bertrand tell Ortiz he was free to go.

The State charged Ortiz with lascivious acts with a child. Ortiz filed a motion to suppress statements made during the interview based on the Fifth and Sixth Amendments to the United States Constitution. Ortiz filed this motion after the court granted him an extension of time to do so. Following a hearing, the district court granted Ortiz's motion to suppress, concluding the record failed to show by a preponderance of the evidence that Ortiz knowingly and intelligently waived his *Miranda* rights and that he made his statements voluntarily. The State filed an application for discretionary review of the district court's ruling, which we granted. We transferred the case to the court of appeals. The court of appeals reversed the district court's suppression order, concluding, "Ortiz was adequately advised of his rights under *Miranda* and he knowingly, voluntarily, and intelligently waived those rights." Ortiz sought further review by this court.

## II. Issues.

The State raises two issues on appeal. First, the district court erred in extending the time for Ortiz to file his motion to suppress. Second, the district court erred in finding the record failed to show by a preponderance of the evidence that Ortiz knowingly and intelligently waived his *Miranda* rights and that he made his statements voluntarily.

**III. Scope of Review.**

We review the district court's good cause determination regarding the timeliness of a motion to suppress for an abuse of discretion. *State v. Ball*, 600 N.W.2d 602, 604–05 (Iowa 1999). We apply a different standard of review when we review the merits of the district court's ruling on the motion to suppress.

The *Miranda* warnings protect a suspect's Fifth Amendment right against self-incrimination "ensuring that a suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574, 107 S. Ct. 851, 857, 93 L. Ed. 2d 954, 966 (1987). Because the State's appeal of the district court's ruling on the motion to suppress implicates constitutional issues, our review is de novo. *State v. Morgan*, 559 N.W.2d 603, 606 (Iowa 1997). For Ortiz's statements to be admissible, the State must first prove Ortiz was adequately informed of his *Miranda* rights, understood them, and knowingly and intelligently waived them. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410, 421 (1986) ("[T]he waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."); *Morgan*, 559 N.W.2d at 606. Second, the State must prove Ortiz gave his statement voluntarily. *Morgan*, 559 N.W.2d at 606. The State must prove by a preponderance of the evidence that a suspect knowingly, intelligently, and voluntarily waived his or her Miranda rights. *Id.*

**IV. Good Cause Determination.**

The State contends Ortiz waived his constitutional objections by failing to file his motion to suppress in accordance with Iowa Rule of Criminal Procedure 2.11(4). The rule requires Ortiz to file his motion

within forty days of the arraignment. Iowa R. Crim. P. 2.11(4). If a defendant fails to file the motion within that time, the objection is waived. *State v. Terry*, 569 N.W.2d 364, 368 (Iowa 1997). However, if the court finds good cause for the late filing, the court can excuse the untimeliness. *Id.*

The trial information was filed August 4, 2006, and Ortiz pled not guilty in a written arraignment on August 16. The initial trial date was set for November 28. This trial date was continued multiple times, with the State agreeing to each continuance.

In May 2007 Ortiz filed a letter with the court complaining that his attorney had not done anything on the case. The court removed Ortiz's counsel and appointed another attorney to represent Ortiz. At the end of May, that attorney moved to withdraw, and another attorney filed an appearance on Ortiz's behalf.

On June 7 the court had a pretrial conference with the State and Ortiz's present attorney regarding the June 26 trial date. This conference appears to be the first time an attorney was willing to do the work necessary to defend Ortiz properly. At the conference, the attorney indicated she wished to take a deposition of the police officers who interviewed Ortiz because there was a question as to whether Ortiz knowingly waived his rights prior to giving his statement. Without objection, the court continued the trial to July 10. The court also granted the attorney's request to take the depositions and stated that any motion to suppress, together with any translations of the interview, should be filed no later than June 21. An order formalizing the June 7 conference was entered on June 8. The defendant complied with the court order and filed his motion to suppress on June 21.

Ortiz's prior counsel did not do anything in furtherance of exploring the possibility of filing a motion to suppress. Shortly after Ortiz's last counsel filed her appearance, she diligently explored the possibility of filing such a motion. If the case did go to trial without the court ruling on the motion to suppress, Ortiz would have had an ineffective-assistance-of-counsel claim against his attorney that would have to be litigated had he been convicted. *See State v. Rhiner*, 352 N.W.2d 258, 261, 264 (Iowa 1984) (holding failure to timely file a motion to suppress that the court should have granted is cause for an ineffective-assistance-of-counsel claim and a reversal of the verdict).

The district court considered the untimely motion due to the multiple changes of counsel and prior counsel's failure to represent Ortiz properly. The district court knew that if Ortiz's motion to suppress should have been granted and the court failed to consider it pretrial, any guilty verdict in Ortiz's case may have been subject to reversal on an ineffective-assistance-of-counsel claim. It is the public policy of this state that litigation should be final at the earliest possible date. To avoid additional litigation in this matter the court did the proper thing by considering the motion rather than waiting for its merits to be determined in a postconviction relief proceeding. Accordingly, the district court did not abuse its discretion in hearing the motion under the circumstances of this case.

**V. Motion to Suppress.**

**A. *Miranda.*** In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Supreme Court required the police to advise suspects of their rights under the Fifth and Fourteenth Amendments before beginning a custodial interrogation. The Supreme Court required that the suspect must be told:

> he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726. The requirement that police officers advise suspects of their *Miranda* rights is more than a mere procedural nicety or legal technicality. *Id.* at 476, 86 S. Ct. at 1629, 16 L. Ed. 2d at 725 ("The requirement of warnings and waiver of rights is . . . fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation."). The police must take the giving of the *Miranda* warnings seriously and must not presume that suspects "are already aware of what rights they possess prior to being questioned." *United States v. San Juan-Cruz*, 314 F.3d 384, 389 (9th Cir. 2002).

Suspects may waive their *Miranda* rights as long as the suspect has done so knowingly, intelligently, and voluntarily. *Miranda*, 384 U.S. at 444, 475, 86 S. Ct. at 1612, 1628, 16 L. Ed. 2d at 706–07, 724. For a waiver to be made knowingly and intelligently, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421, 106 S. Ct. at 1141, 89 L. Ed. 2d at 421. For a waiver to be made voluntarily, the relinquishment of the right must have been voluntary, meaning it was the product of the suspect's free and deliberate choice rather than intimidation, coercion, or deception. *Id.*

The question of whether a suspect in fact knowingly, intelligently, and voluntarily waived his or her *Miranda* rights is to be made by inquiring into the totality of the circumstances surrounding the interrogation, to ascertain whether the suspect in fact "decided to forgo his rights to remain silent and to have the assistance of counsel." *Fare v.*

*Michael C.*, 442 U.S. 707, 724–25, 99 S. Ct. 2560, 2571–72, 61 L. Ed. 2d 197, 212 (1979). Statements made by a suspect during a custodial interrogation are inadmissible unless a suspect is specifically warned of his or her *Miranda* rights and freely decides to forgo those rights. *New York v. Quarles*, 467 U.S. 649, 654, 104 S. Ct. 2626, 2630, 81 L. Ed. 2d 550, 556 (1984).

**B. Custodial Interrogation.** The State claims Ortiz was not in custody at the time of his interrogation; therefore, the police were not required to give him *Miranda* warnings prior to the interrogation. The *Miranda* opinion provides that a suspect is in custody upon formal arrest or under *any other circumstances* where the suspect is deprived of his or her freedom of action in *any* significant way. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706. In determining whether a suspect is "in custody" at a particular time, we examine the extent of the restraints placed on the suspect during the interrogation in light of whether "a reasonable man in the suspect's position would have understood his situation" to be one of custody. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151, 82 L. Ed. 2d 317, 336 (1984). We apply this test objectively. *State v. Miranda*, 672 N.W.2d 753, 759 (Iowa 2003). In making our determination, we consider the following four factors:

> (1) the language used to summon the individual;
>
> (2) the purpose, place, and manner of interrogation;
>
> (3) the extent to which the defendant is confronted with evidence of [his] guilt; and
>
> (4) whether the defendant is free to leave the place of questioning.

*Id.*

An application of these factors reveals that when Bertrand approached Ortiz, he asked Ortiz if he would accompany him to the police station for the purpose of being interviewed. At the time of the request, Bertrand's badge and gun were on his waist and in full view of Ortiz. Although Rocha explained to Ortiz that he was not under arrest and could refuse to go to the station, Ortiz agreed without any reluctance. When Ortiz agreed to go to the station, Bertrand did not give Ortiz the choice of driving his own vehicle to the station. Therefore, Ortiz's transportation was miles away from the station.

At the station, Bertrand took Ortiz to the second floor and put him in an interview room. Bertrand had to use a key card to access the elevator, leaving the impression a key card would be required to exit the area as well. Prior to any questioning, the police attempted to give Ortiz his *Miranda* warnings, warnings required to be given prior to a custodial interrogation. Even though Bertrand never told Ortiz he was under arrest at the station, Bertrand also never told Ortiz he was free to leave the station. *See United States v. Longbehn*, 850 F.2d 450, 453 (8th Cir. 1988) (finding defendant in custody where record reflected no evidence that suspect was free to leave). *But see Oregon v. Mathiason*, 429 U.S. 492, 494–95, 97 S. Ct. 711, 713–14, 50 L. Ed. 2d 714, 719 (1977) (finding of coercion mitigated where suspect was free to leave and was informed he was not under arrest). Even if Ortiz wanted to leave, he had no transportation to return to his vehicle.

The purpose of the interrogation was to obtain Ortiz's confession. In furtherance of that purpose, after asking some preliminary questions, Bertrand confronts Ortiz with the mother's allegations of inappropriate contact between Ortiz and her daughter. Next, Bertrand launches into

the interrogation by asking Ortiz how many times he had inappropriate contact with the girl.

Although the State maintains Ortiz was not in custody, in light of all the circumstances, we believe once Ortiz was transported to the police station and put in the interview room a reasonable person in Ortiz's position would have understood his situation to be one of custody. Thus, Bertrand was required to give Ortiz his *Miranda* warnings before beginning the interrogation.

**C. Knowing and Intelligent Waiver.** The State has the burden to prove by a preponderance of the evidence that Ortiz knowingly and intelligently waived his *Miranda* rights. *Morgan*, 559 N.W.2d at 606. The Supreme Court has never required a precise formulation of the *Miranda* warnings. *Duckworth v. Eagan*, 492 U.S. 195, 202, 109 S. Ct. 2875, 2880, 106 L. Ed. 2d 166, 176–77 (1989). To determine whether a suspect's waiver of his or her *Miranda* rights was knowing and intelligent, we must inquire if the suspect knew that he or she did not have to speak to the police without counsel and understood that statements provided to the police could be used against him or her. *United States v. Yunis*, 859 F.2d 953, 964–65 (D.C. Cir. 1988). This does not mean a suspect must understand the tactical advantage of keeping silent in order to make a valid waiver. *Id.* at 965.

Although language barriers may have hindered Ortiz's ability to knowingly and intelligently waive his *Miranda* rights, the translation of the *Miranda* rights need not be a perfect one, so long as Ortiz understood that he did not need to speak to the police without counsel and that any statement he made could be used against him. *United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990). However, regardless of what language is used to convey the warnings to Ortiz, the warnings

must " 'be clear and not susceptible to equivocation' " and provide " ' "meaningful advice to the unlettered and unlearned in language which [he] can comprehend and on which [he] can knowingly act." ' " *United States v. Perez-Lopez*, 348 F.3d 839, 848 (9th Cir. 2003) (quoting *San Juan-Cruz*, 314 F.3d at 387).

After reviewing the totality of the circumstances surrounding Ortiz's interrogation, we agree with the district court that the State has failed to meet its burden to show by a preponderance of the evidence that Ortiz waived his *Miranda* rights knowingly and intelligently. First, the State failed to establish Ortiz spoke and understood English. Because of this language barrier, it was incumbent upon the State to prove that the warnings given to Ortiz in Spanish provided him meaningful advice in a language he could comprehend and on which he could knowingly act.

Second, Bertrand gave Ortiz a written warning that made no sense. Although the literal translation contains bits and pieces of the required *Miranda* warning, the record is devoid of any testimony that a Spanish-reading individual would read the written warning and glean any indication of his or her *Miranda* rights. The record factually reveals that after Ortiz read and signed this waiver, he asked not once, but twice as to what his rights were.

Third, both Ortiz and the State introduced the literal translation of the *Miranda* warnings as read by Sanchez. Ortiz's translation states Sanchez told Ortiz, "You have the right to consult with an attorney before *asking* questions and have this attorney present during the questioning." The State's translation states Sanchez told Ortiz, "You have the right to consult with an attorney before *making* any questions and have said attorney present during the interview." *Miranda* requires that a suspect be informed, "that he has the right to the presence of an attorney, and

that if he cannot afford an attorney one will be appointed for him *prior to any questioning* if he so desires." *Miranda*, 384 U.S. at 479, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726 (emphasis added).

Both Ortiz's and the State's translations convey to an English-speaking individual that before Ortiz asked or made a question he had a right to have an attorney present. Neither translation conveys to Ortiz that he has the right to an attorney before being asked to answer any questions. If this warning, as translated into English, was given to an English-speaking person, the person's statement would not be admissible because the warning given does not contain the essence of *Miranda*. *Miranda* requires that a suspect be informed that he or she has a right to counsel before *being* asked questions rather than before *asking* or *making* questions. The warning Ortiz received confuses the issue of who is asking or making the questions and fails to adequately inform him of his *Miranda* rights.

The State seems to argue that due to the nature and syntax of the Spanish language a suspect who spoke and understood Spanish would understand the Spanish *Miranda* warning to convey that prior to or during any interrogation by the police, the suspect would have a right to consult with an attorney. Although this argument may have some merit, the record contains no evidence that would allow us to find the Spanish *Miranda* warning was sufficient. Neither party called an interpreter to testify how a Spanish-speaking individual would understand the Spanish translation of *Miranda*. The only evidence of what was conveyed to Ortiz was copies of the translation that was admitted into evidence. The bare translation of Sanchez's words does not satisfy the State's burden to prove Ortiz knowingly and intelligently waived his *Miranda* rights.

Finally, after Sanchez read Ortiz his rights, Sanchez then asked Ortiz, "Do you have questions right now?" Ortiz replied, "No. Not right now. I want to know [unintelligible]." Sanchez appeared to cut off the rest of Ortiz's answer by telling Bertrand, "He understood his rights. I asked him if he has any questions, he says he knows what is going on." Bertrand then began to interrogate Ortiz. We are concerned about the haste used by Sanchez and Bertrand to begin the interrogation after Ortiz stated, "I want to know [unintelligible]." We are not convinced that Ortiz's unintelligible statement was not a request for further clarification. It is the State's burden to prove his unintelligible statement was not a request for further clarification. Under this record, we cannot make a finding the unintelligible statement was not such a request.

Accordingly, under the totality of the circumstances, the State has failed to meet its burden that Ortiz knowingly and intelligently waived his *Miranda* rights. Consequently, the district court was correct when it suppressed Ortiz's statements made during his interview at the Sioux City police department.

**D. Voluntary Waiver.** Even though the district court found Ortiz did not voluntarily waive his *Miranda* rights, we need not decide this issue having found the waiver was not given knowingly and intelligently.

**VI. Disposition.**

Because we agree with the district court that Ortiz did not knowingly and intelligently waive his *Miranda* rights, we vacate the decision of the court of appeals and affirm the judgment of the district court. Therefore, we remand this case to the district court to proceed in a manner consistent with this decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AND CASE REMANDED.**

All justices concur except Streit and Cady, JJ., who dissent.

**STREIT, Justice (dissenting).**

I disagree. The *Miranda* warning read to Luis Ortiz conveyed the key requirements of *Miranda*, specifically the right to consult with an attorney and have the attorney present during questioning. Ortiz's waiver and subsequent confession were voluntary considering the totality of the circumstances. I would affirm the court of appeals and reverse the district court.

### I. Background Facts.

The majority does not take into account some key facts. At the police station, Officer Bertrand took Ortiz to an interview room and gave Ortiz a "Waiver of Rights" form[2] written in Spanish and asked him to

---

[2]The defendant's expert translated the waiver of rights form as follows:

VOLUNTARY WAIVER OF RIGHTS

(WAIVER OF RIGHTS)

I have read the declaring [*sic.*] of the [non-word] upon which I am noticed of my rights on [*sic.*] the constitution and the legal [*sic.*] and I completely understand what my rights are. I have received the opportunity to use the telephone to notify an attorney or individual from my family. I agree to answer an [*sic.*] questions and make an [*sic.*] statement. I know exactly what I am doing and I am doing so as a volunteer [*sic.*] and underneath [*sic.*] my own [*sic.*] will. I do not want to consult with an attorney and I don't want to have an attorney be witnessed [*sic.*] here to inform me of my rights. I have not received any promise of immunity of any other type and they have not used any physically [*sic.*] force or pressionment [*sic.*] of any to force me to make a statement.

The original Spanish reads:

RENUNCIA VOLUNTARIA DE LOS DERECHOS

(WAIVER OF RIGHTS)

He leido el declaracion de advertiso en que estoy avisado de mis derechos del constitucion y del juridico y entiendo completamente cuales son mis derechos. He recibido la oportunidad de usar el telefone para notificar un licenciado o una persona de mi familia. Estoy de acuerdo a contestar cualquier preguntos y hacer un declaracion. Se exactamente lo que estoy haciendo y eso lo hago de voluntario y debajo mi propira voluntad. No quiero consultar con un licenciado y no quiero tener un

read it. The form was not by any means a valid *Miranda* waiver. Although it acknowledges the right to an attorney, it did not mention the right to remain silent or have an attorney appointed if you cannot afford one. Officer Salvador Sanchez, of the Sioux City Police Department, was present as an interpreter. Sanchez asked Ortiz if he could read the form, and Ortiz responded that he could. Sanchez then left the room for a moment, and Ortiz signed the waiver of rights form. After Ortiz signed the form, Bertrand asked him, "Do you understand your rights?" Ortiz responded, "But what are my rights?" Bertrand waited for Sanchez to return. When Sanchez returned, he asked Ortiz, "Do you understand what you read?" Ortiz responded, "He is telling me the rights, but what are they, what are they?" This was a direct question as to what this form meant when it said "I completely understand what my rights are." If anything, this demonstrated Ortiz knew exactly what was going on. He had not been told his rights. He asked with clarity what they were. Sanchez then began reading out loud the waiver of rights form that Ortiz had signed. Sanchez stopped reading (perhaps realizing the Waiver of Rights form would not adequately tell him his rights) and instead read Ortiz the Spanish *Miranda* advisory card used by the federal Drug Enforcement Administration.[3] The following is a translation by the defendant's expert of the advisory Sanchez recited to Ortiz:

> Before asking some questions, you have to understand the following. Okay? You have the right to remain silent.

---

licenciado presenciarse aqui para avisarme de mis derechos. No he recibido ninguna promesa de inminudad ni de cualquier otro tipo y no han usado ninguna fuerza fisicamente ni presura de cualquier tipo para forzarme de hacer una declaracion.

[3]Sanchez works on a joint drug task force. He testified that he is more comfortable with the *Miranda* form used by the Drug Enforcement Administration, form 13A, a card which includes a *Miranda* warning in English on one side and a Spanish version on the other side.

Anything you say can be used against you in the court. You have the right to consult with an attorney before *asking* questions and have this attorney present during the questioning. If you cannot pay for the services of an attorney, one will be [unintelligible] to you, if you so desire. You understand you?[4]

(Emphasis added.) Ortiz responded that he had no questions. He then confessed to making the girl touch his penis.

## II. Knowing and Intelligent Waiver.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the United States Supreme Court determined that the Fifth and Fourteenth Amendments require the police to inform a suspect he has a right to remain silent and a right to counsel during custodial interrogation. A defendant can waive these rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda,* 384 U.S. at

---

[4]The original Spanish advisory Sanchez recited to Ortiz is as follows:

Antes de hacer algunas preguntas, usted tiene que entender de lo siguiente: Okay, usted tiene el derecho de permanecer callado. Cualquier cosa que usted diga se puede usar en su contra en la corte. Usted tiene el derecho de consultar con abogado antes de hacerle algunas preguntas y tener dicho abogado presente durante el interrogatorio. Si usted no puede pagar por los servicios de un abogado, uno será nombrado para usted, antes de cualquier interrogatirio, si usted desea. Entiendes usted?

Sanchez read the federal DEA *Miranda* advisory correctly, without any word substitutions. The translation cited in the text above is from the defendant's expert, Michael D. Powers, Ph.D. and United States Certified Court Interpreter in Spanish. The state's interpreter, Giovanna Canet, a certified Spanish interpreter for the State of Iowa, translates the key phrase "Usted tiene el derecho de consultar con abogado antes de hacerle algunas preguntas y tener dicho abogado presente durante el interrogatorio" slightly differently than the defendant's expert. Her translation, in State's Exhibit 5, reads "You have the right to consult with an attorney before making any questions [and] have said attorney present during the interview."

DEA Form 13A includes both an English and a Spanish *Miranda* advisory to be read to the suspect prior to interrogation. The English version on the form reads "You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning." DEA Form 13A.

444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 707. "The State must prove, by a preponderance of the evidence, that constitutional rights were knowingly waived and that statements of an inculpatory nature were voluntarily given." *State v. Morgan*, 559 N.W.2d 603, 606 (Iowa 1997). Absent *Miranda* warnings and a valid waiver of those rights, statements made during an interrogation are inadmissible. *Miranda*, 384 U.S. at 479, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726.

In determining whether a defendant has validly waived his *Miranda* rights, we must consider the following:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410, 420–21 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2572, 61 L. Ed. 2d 197, 212 (1979)).

Ortiz does not assert that his waiver was coerced. Rather, he contends because the recitation of his rights did not properly explain a lawyer would be available to him before *answering* questions, he did not fully understand the rights he was waiving. Ortiz argues informing him he has the right to consult with an attorney before "*asking* questions"[5] is significantly different from having the right to consult with an attorney before "*answering* questions" and does not satisfy the requirements of *Miranda.*

---

[5]As noted above, the State's interpreter translated the phrase "antes de hacerle algunas preguntas" as "before making any questions."

*Miranda* does not require that a "precise formulation of the warning [be] given to a criminal defendant." *California v. Prysock*, 453 U.S. 355, 359, 101 S. Ct. 2806, 2809, 69 L. Ed. 2d 696, 701 (1981). The United States Supreme Court has "never insisted that *Miranda* warnings be given in the exact form described in that decision." *Duckworth v. Eagan*, 492 U.S. 195, 202, 109 S. Ct. 2875, 2880, 106 L. Ed. 2d 166, 176 (1989). We have adopted the federal standard and have determined that *Miranda* warnings need only "reasonably relay to an accused his rights as required by the *Miranda* decision." *State v. Schwartz*, 467 N.W.2d 240, 246 (Iowa 1991).

The fact that *Miranda* rights are translated into the suspect's native language does not change the analysis. *See, e.g., United States v. Perez-Lopez*, 348 F.3d 839, 848–49 (9th Cir. 2003). As the Tenth Circuit has noted,

> Although language barriers may inhibit a suspect's ability to knowingly and intelligently waive his *Miranda* rights, when a defendant is advised of his rights in his native tongue and claims to understand such rights, a valid waiver may be effectuated. The translation of a suspect's *Miranda* rights need not be a perfect one, so long as the defendant understands that he does not need to speak to police and that any statement he makes may be used against him.

*United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990) (citations omitted).

In *Prysock* and *Duckworth*, the United States Supreme Court found the *Miranda* warnings given were adequate where they apprised the individual of the following rights: (1) the right to remain silent, and anything the individual says can be used against him or her in a court, (2) the right to the presence of an attorney during questioning, and (3) the right to have an attorney appointed at no cost if the individual cannot afford one. *Duckworth*, 492 U.S. at 203, 109 S. Ct. at 2880, 106 L. Ed.

2d at 177; *Prysock*, 453 U.S. at 361, 101 S. Ct. at 2810, 69 L. Ed. 2d at 702.

In determining whether a warning fully conveys the *Miranda* rights, federal courts are split on whether it is necessary to inform the individual that he has the right to an attorney present *during questioning* as opposed to a general advisement of the right to have an attorney present. The Fifth, Sixth, and Ninth Circuits have held that the suspect is entitled to be expressly informed that he has the right to an attorney present during questioning. *See United States v. Tillman*, 963 F.2d 137, 140–41 (6th Cir. 1992) (holding "the right to the presence of an attorney" did not adequately inform suspect of the right to the presence of an attorney during questioning); *United States v. Noti*, 731 F.2d 610, 615 (9th Cir. 1984) (constitutional rights violated where defendant only informed of right to presence of attorney *before* questioning and not *during* questioning); *Windsor v. United States*, 389 F.2d 530, 533 (5th Cir. 1968) ("Merely telling [defendant] that he could speak with an attorney . . . before he said anything at all is not the same as informing him that he is entitled to the presence of an attorney during interrogation and that one will be appointed if he cannot afford one.").

In contrast, the Fourth and Eighth Circuits have determined a general advisement that the suspect has a right to the presence of an attorney was adequate, and it was not necessary to expressly inform the suspect he has the right to an attorney present *during questioning*. *See United States v. Frankson*, 83 F.3d 79, 82 (4th Cir. 1996) (general warning "you have the right to an attorney" satisfied *Miranda* requirements); *United States v. Caldwell*, 954 F.2d 496, 502 (8th Cir. 1992) (general warning that defendant has the right to an attorney

sufficient and no strict requirement that "a defendant be explicitly advised of his right to an attorney before and during questioning").

Advising the suspect he has a right to the presence of an attorney during questioning more precisely conveys the key requirements of *Miranda* than simply informing the suspect he has a right to the presence of an attorney in general. Here, the warnings given to Ortiz "touched all aspects and requirements of *Miranda*." *Schwartz*, 467 N.W.2d at 246. It contained the essence of the *Miranda* warnings. Sanchez informed Ortiz of his right to speak to a lawyer during questioning, and that a lawyer would be appointed for him if he could not afford one. He also informed Ortiz he had the right to remain silent and anything he said could be used against him in court. Assuming the translation offered by the defendant's expert to be correct,[6] Sanchez's statement that Ortiz could speak to a lawyer before *asking* questions (as opposed to before *answering* questions) does not make a substantive difference in Ortiz's rights since the translation conveyed the key requirement of having counsel present *during* questioning. Given the context of the sentence, it is unfair to conclude Ortiz understood he had a right to an attorney only while he asked the officers questions. Furthermore, in the written waiver of rights Ortiz signed, he "agreed to answer . . . questions and to make . . . [a] statement." Ortiz was not misled about his rights. Exchanging one word ("asking" for "answering") did not change the substance of the rights conveyed. Sanchez informed Ortiz, "You have the right to consult with an attorney before asking [or

---

[6]Only the defendant's interpreter translated the phrase "usted tiene el derecho de consultar con un abogado, antes de harcele algunas preguntas" as "you have the right to consult with an attorney before *asking* questions." The State's interpreter translated the phrase "antes de hacerle algunas preguntas" as "before making any questions," and the English version on DEA Form 13A reads "you have the right to talk to a lawyer for advice before we ask you any questions."

making] questions and have this attorney present during the questioning [or interview]." Further, federal courts have recognized DEA Form 13A, the Spanish *Miranda* advisory Sanchez read to Ortiz, provides the *Miranda* warning in Spanish. *See, e.g., United States v. Labrada-Bustamante,* 428 F.3d 1252, 1257 n.3 (9th Cir. 2005) ("A DEA Form 13A states the *Miranda* warnings in both English and Spanish.").

Ortiz was "clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." *Miranda,* 384 U.S. at 471, 86 S. Ct. at 1626, 16 L. Ed. 2d at 722. In addition, Sanchez asked Ortiz a few times whether he understood his rights and whether he had any questions. Ortiz's waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran,* 475 U.S. at 421, 106 S. Ct. at 1141, 89 L. Ed. 2d at 420–21.

Even though Ortiz was told he had the right to an attorney before asking questions, he received information of no consequence. In the context of the warning, this advisement was superfluous. There was no confusion created by this phrase. We have not come across any cases where the defendant complains his warning was inadequate because he was informed only that he had a right to counsel *during* questioning but not *before* questioning. The core right, as set forth in *Miranda,* is the right to consult with an attorney and have the attorney present during interrogation. *Miranda,* 384 U.S. at 471, 86 S. Ct. at 1626, 16 L. Ed. 2d at 722 ("Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . . .").

I agree with the court of appeals that Ortiz's confession was voluntary. The district court, in concluding Ortiz's waiver and confession

were involuntary, relied on a written translation of the interview. Upon reviewing the video-recorded[7] waiver of rights and confession (and the accompanying interpretation), it is clear Ortiz's statements were "the product of an essentially free and unconstrained choice, made by the defendant whose will was not overborne or whose capacity for self-determination was not critically impaired." *State v. Payton*, 481 N.W.2d 325, 328 (Iowa 1992). The interview lasted about an hour. The officers did not intimidate, deceive, threaten, or promise anything to Ortiz to induce him to waive his rights or confess. Although the transcript reads somewhat choppy and suggests the officers cut off Ortiz on a few occasions, the video recording reveals the officers allowed Ortiz time to both answer and ask questions. There was no haste. Ortiz was even allowed to call his wife (or girlfriend) on his cell phone.[8] The tone of the questioning was neither harsh nor coercive. Considering the totality of the circumstances, Ortiz's waiver and subsequent confession were "made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 707.

As the *Miranda* warnings given to Ortiz conveyed the key requirements of *Miranda*, specifically the right to consult with an attorney and have the attorney present during questioning, and his confession was voluntary, his confession should be admissible.

Cady, J., joins this dissent.

---

[7]This case is an excellent example of the value of electronically recorded police interrogations. *See State v. Hajtic*, 724 N.W.2d 449, 456 (Iowa 2006) ("We believe electronic recording, particularly videotaping, of custodial interrogations should be encouraged . . . .").

[8]During this call, he admitted there was a problem with the daughter and that "she touched me." These statements are not an issue in this appeal.