# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

JOHN EDWARD BARRITT,

       Defendant-Appellee.

FOR PUBLICATION
February 14, 2017

No.  333206
Genesee Circuit Court
LC No.  15-038224-FC

---

Before:  K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

GLEICHER, J. (*concurring*).

I concur with the majority that defendant John Barritt was in custody during the time he was questioned by the Calhoun County deputies.  This case illustrates, however, that determining whether a person is in custody can be challenging.  Both the majority and the dissent raise arguments consistent with the record.  Both opinions cite valid caselaw.  I write separately to flesh out an additional analytical approach.

*Miranda* instructs that "in all settings in which [a person's] freedom of action is curtailed in any significant way," the police must warn the suspect of his right to remain silent and assure him that an exercise of that right will be honored.  *Miranda v Arizona*, 384 US 436, 467; 86 S Ct 1602; 16 L Ed 2d 694 (1966).  This is so because "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements[.]" *Dickerson v United States*, 530 US 428, 435; 120 S Ct 2326; 147 L Ed 2d 405 (2000).  Thus, the familiar warnings are "an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere." *Miranda*, 384 US at 468.

Whether an "interrogation atmosphere" exists depends on whether the person being questioned is actually in police custody.  " '[C]ustody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v Fields*, 565 US 499, 508-509; 132 S Ct 1181; 182 L Ed 2d 17 (2012).  We determine whether a person is in custody by objectively evaluating "all of the circumstances surrounding the interrogation." *Stansbury v California*, 511 US 318, 322; 114 S Ct 1526; 128 L Ed 2d 293 (1994).  Our goal is to determine "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action.' " *Id*. at 325.  In other words, we ask: would a reasonable person in the suspect's position have understood that he or she was free to walk away from the police during the questioning?

Caselaw from other jurisdictions offers organizational structures that assist in determining the presence or absence of custody for *Miranda* purposes. My application of those approaches convinces me that Barritt was in police custody during the questioning.

In *Howes*, 565 US at 509, the United States Supreme Court identified a handful of "[r]elevant factors" that should guide a court's custody inquiry: "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints . . ., and the release of the interviewee at the end of the questioning." (Citations omitted.) The Supreme Court assigned no particular weight to any of the factors; the factual considerations are guides rather than rigid or immutable requirements. When applied to the facts of this case, these factors compel the conclusion that Barritt was in custody while being questioned about Amy Wienski's disappearance.

As to location, an interview that takes place in public, or in a suspect's home, weighs against a finding of custody. See *Berkemer v McCarty*, 468 US 420, 438; 104 S Ct 3138; 82 L Ed 2d 317 (1984); *Beckwith v United States*, 425 US 341, 342, 347-348; 96 S Ct 1612; 48 L Ed 2d 1 (1976). On the other hand, a police station environment represents the quintessential "police-dominated atmosphere" referenced in *Miranda*, 384 US at 445. The *Howes* Court put it this way: "A person who is 'cut off from his normal life and companions and abruptly transported from the street into a 'police-dominated atmosphere' may feel coerced into answering questions." *Howes*, 565 US at 511 (citations omitted). Here, the station house location of the questioning weighs in favor of a finding of custody. In my view, this is true whether the door to the office in which Barritt was questioned was locked or unlocked. The central thrust of this consideration is the general location of the questioning, not its distinct features.

The caselaw provides no bright-line rules regarding how long an interrogation must proceed before its duration is more consistent with custody than not. Ninety minutes, the time that elapsed before Barritt's arrest, likely falls on the shorter end of the spectrum. But see *Yarborough v Alvarado*, 541 US 652, 665; 124 S Ct 2140; 158 L Ed 2d 938 (2004) (a two-hour interview pointed toward a finding of custody); *United States v FNU LNU*, 653 F3d 144, 155 (CA 2, 2011) (the interview "lasted for 90 minutes, substantially longer than most interviews that we have deemed non-custodial in other contexts"). Here, the 90 minutes of questioning began at approximately 7:40 p.m. Objectively, two hours of night-time questioning is more consistent with a perception of custody than with a belief that one could simply get up and walk out of the room.

Statements made during an interview are also relevant to a custody determination. In *Yarborough*, the Supreme Court observed that the failure of an interrogating officer to tell a suspect that he could leave militated toward a finding of custody. *Yarborough*, 541 US at 665. The Supreme Court of New Hampshire weights that fact heavily in its custody analysis:

> Here, the question is whether the restraint on the defendant's movement was akin to a formal arrest. Consequently, whether the defendant was told that he was at liberty to terminate the interrogation provides strong evidence as to whether a reasonable person in the defendant's position would feel free to leave. Thus, notwithstanding the fact that the defendant was told that he was not under

arrest, the lack of evidence that he was told he was free to terminate the interrogation supports a finding of custody at some point during the interrogation.
[*State v McKenna*, 166 NH 671, 680; 103 A3d 756 (2013).]

See also *People v Elmarr*, 181 P3d 1157, 1163 (Colo, 2008) (finding it "important[]" that the defendant "was never told he was not under arrest, or that he was free to leave"); *State v Ortiz*, 766 NW2d 244, 252 (Iowa, 2009) (finding that the defendant was in custody based in part on the fact that "[e]ven though [the officer] never told Ortiz he was under arrest at the station, [the officer] also never told Ortiz he was free to leave the station"); and *Howes*, 565 US at 515 (fact that police told incarcerated suspect that he was free to return to his cell and end interview was "[m]ost important" consideration in making custody determination).

Barritt was never told that he could return home. And although an objective standard governs our review, the testimony of detective Bryan Gandy supports that Barritt would not have been permitted to leave the station had he asked to do so. Gandy admitted that when applying for a search warrant of Wienski's home, he averred that "the description of the subject who burned Amy Winski's [sic] rental car matches that of John Barritt." Barritt was the prime suspect in a criminal investigation. It stretches credulity that the deputies would have permitted him to walk out of station. Objectively, the officers' failure to advise Barritt of his right to do so (since he was not under arrest at the time) weighs in favor of a custody finding.

Furthermore, as the majority opinion elucidates, the *nature* of Barritt's interrogation also objectively demonstrates that Barritt was in the officers' custody. The New Hampshire Supreme Court observed in *McKenna*: "The accusatory nature of questioning is widely recognized as a factor weighing in favor of a finding of police custody." *McKenna*, 166 NH at 681. While the officers' personal opinions about the guilt of their subject are irrelevant to a custody analysis, those beliefs "may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned." *Stansbury*, 511 US at 325. The officers adopted an aggressive tone during the interrogation. They repeatedly challenged Barritt's claim that he did not know where Wienski was, and had not driven her car. The tenor of the questioning was consistent with confession-extraction and therefore with custody.

The use of physical restraints is a fact that pushes the scale toward a custody finding. Although handcuffing a suspect is not dispositive of custody, it goes a long way toward establishing that an individual reasonably felt that he was not at liberty to terminate an interrogation. *White v United States*, 68 A3d 271, 279-280 (DC Ct App, 2013). But "effective restrictions on a defendant's movement can be a product of verbal, psychological, or situational restraint." *McKenna*, 166 NH at 678. Here, Barritt was not handcuffed. Nevertheless, he was driven to the police station in the back seat of a marked police vehicle and left there in the company of two deputies, questioned in a room with the door closed in a locked building during nonworking hours. In my view, these very real physical restraints on Barritt's freedom tend to demonstrate a custodial situation.[1]

---

[1] The dissent points out that Barritt "agreed to ride in a marked police car." While this is true, it ignores the surrounding circumstances. When Barritt pulled up at his home, he found a number of deputies performing a search of the property. His pets had been taken into custody. He was

The final factor referenced in *Howes*, "the release of the interviewee at the end of the questioning," weighs in favor of a finding of custody. I readily concede that the Supreme Court's designation of this fact as relevant to a custody analysis seems somewhat anomalous, as it does not touch on the events of the interrogation itself. For an in-depth discussion of this factor, see Pettinato, *The Custody Catch-22; Post-Interrogation Release as a Factor in Determining Miranda Custody*, 65 Ark L Rev 799, 818 (2012) ("One oddity that has resulted from the general lack of clarity in *Miranda* custody jurisprudence is the consideration of post-interrogation arrest or release in the totality-of-the-circumstances test.").

Applied in this case, the *Howes* custody factors weigh heavily in favor of a finding of custody. Barritt was taken to the police station in the back seat of a marked car, was accusatorily questioned in a police station by two armed deputies, was never told that he could leave or terminate the questioning, and was arrested when the interview concluded despite not having confessed to playing any part in Wienski's disappearance.

The factor approach suggested in *Howes* forces a court to maintain a wide-angle focus in determining whether a reasonable person in a suspect's position would have felt free to terminate police questioning. The majority hews closely to this totality-of-the-circumstances mandate. The facts surrounding Barritt's interrogation, viewed through the *Howes* factors' lens, strongly support that a finding of custody. I join the majority in full.

/s/ Elizabeth L. Gleicher

---

immediately approached by an armed deputy who (in the deputy's words) "had Mr. Barritt have a seat in the back of my car." According to that same deputy, Barritt "was escorted in" the police department. These circumstances are far more consistent with a restriction of freedom that with a voluntary cooperation.

In *McKenna*, 166 NH at 684, the New Hampshire Supreme Court discussed a custody factor relevant to the character of the interrogation: "the fact that the police initiated the contact with the defendant." When law enforcement authorities instigate a "confrontation between the suspect and the criminal justice system . . . custody is more likely to exist." *Id*. (quotation makrs and citation omitted). Here, a number of officers arrived at the home Barritt shared with Wienski and executed a search warrant. As in *McKenna*, this fact weighs in favor of a custody finding. See also *Ross v State*, 45 So3d 403, 415 (Fla, 2010) (citation omitted) (in which the Florida Supreme Court also relies on "the manner in which police summon the suspect for questioning" as a factor of importance in ascertaining custody).