# IN THE COURT OF APPEALS OF IOWA

No. 21-0404
Filed August 17, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JESUS SANCHEZ,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Henry W. Latham II,

Judge.

        Jesus Sanchez appeals his convictions for possession of a controlled

substance with intent to manufacture or deliver and failure to affix a tax stamp.

**AFFIRMED.**

        William L. Breedlove of Breedlove Legal, LLC, Moline, Illinois, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

        Considered by Bower, C.J., Vaitheswaran, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**VOGEL, Senior Judge.**

Jesus Sanchez appeals his convictions for possession of a controlled substance with intent to manufacture or deliver and failure to affix a tax stamp. He argues (1) the district court made multiple errors related to his waiver of his *Miranda*[1] rights; (2) the court erred in admitting a laboratory report and substances tested for the report; and (3) there is insufficient evidence to support both convictions. We reject his arguments and affirm.

### I. Background Facts and Proceedings

On July 20, 2016, Officer Andrew Raya with the Moline, Illinois, Police Department questioned Sanchez at the Moline police building. Officer Raya, who speaks English and Spanish, presented Sanchez with pre-printed Spanish-language forms summarizing a defendant's *Miranda* rights and granting permission to search. The *Miranda* form indicates Sanchez refused to sign the form, though Officer Raya testified he reviewed the *Miranda* rights with Sanchez and Sanchez then agreed to talk. The permission-to-search form bears Sanchez's signature granting permission to search a home in Davenport. Officer Raya testified Sanchez said approximately nine ounces of cocaine was inside a bookbag in his bedroom at the home. Officer Raya also testified Sanchez said the nine ounces of cocaine were the remainder of one kilogram he purchased on July 3. Officers used this information to obtain a search warrant for the residence.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (summarizing the warnings required to be given to suspects before custodial interrogation to ensure they understand the privilege against self-incrimination).

Around midnight on July 21, 2016, officers, including Deputy Greg Hill with the Scott County Sheriff's Office, executed the search warrant on the Davenport home. Deputy Hill testified one or two persons were in the home at the time, but he did not know their names or their relation to Sanchez. Deputy Hill testified they searched the bedroom believed to belong to Sanchez and found suspected cocaine inside two backpacks and two dresser drawers, some of which was wrapped in baggies in approximate one-ounce quantities. Officers also found more than $14,000 in cash, three digital scales, unused cellophane and plastic baggies, and a paystub bearing Sanchez's name and the address of the home. Officers labeled and seized the items as evidence and sent the suspected cocaine to the Iowa Division of Criminal Investigation (DCI) laboratory for testing.

A criminalist with the DCI laboratory testified he received the suspected cocaine officers sent from the Davenport home. He also testified that testing confirmed the substances were cocaine salts. His report, admitted into evidence, shows the substances combined to present approximately 523.9 grams of cocaine salts.

The State charged Sanchez with possession of a controlled substance (more than 500 grams of "[c]ocaine, its salts, optical and geometric isomers, or salts of isomers") with intent to manufacture or deliver and failure to affix a tax stamp. Iowa Code §§ 124.401(1)(a)(2)(b), 453B.12 (2016). Following a bench trial, the district court convicted Sanchez as charged. The court sentenced him to terms of incarceration of fifty years on the possession charge and five years on the tax-stamp charge, run concurrently. Sanchez appeals.

## II. *Miranda* Rights

Sanchez argues the use of the Spanish-language *Miranda* rights form violates Iowa's statutory declaration that English is "the official language of the state." Iowa Code § 1.18 (requiring "[a]ll official documents" to "be in the English language"). Sanchez never claimed a violation of section 1.18 in the district court proceeding. For that reason, any argument regarding section 1.18 is not preserved for our review. *See State v. Manna*, 534 N.W.2d 642, 644 (Iowa 1995) ("Our preservation rule requires that issues must be presented to and passed upon by the district court before they can be raised and decided on appeal.").[2]

Sanchez also argues the court erred in finding he effectively waived his *Miranda* rights. Sanchez raised this objection during trial. It is not clear what remedy he seeks for this alleged ineffective waiver of *Miranda* rights, but the district court treated his mid-trial motion as a motion to suppress his statements to Officer Raya. *See State v. Ortiz*, 766 N.W.2d 244, 254 (Iowa 2009) (affirming the suppression of evidence made during custodial interrogation when law enforcement did not obtain an effective waiver of *Miranda* rights). The court denied Sanchez's motion to suppress as untimely.

A defendant must file a motion to suppress within forty days of arraignment or show good cause for the late motion; otherwise, the defendant waives any claim of suppression. *See id.* at 250; *see also* Iowa R. Crim. P. 2.11(4). Sanchez did not raise the issue of whether he effectively waived his *Miranda* rights until mid-

---

[2] Additionally, it is not clear what remedy Sanchez is seeking for the alleged violation of section 1.18. To the extent he argues for the suppression of evidence due to the alleged violation of section 1.18, he did not make a timely motion to suppress for the reasons discussed below.

trial.  He also made no argument to the district court or on appeal that he had good cause for the late motion.  Therefore, he waived any argument his statements should be suppressed based on an ineffective waiver of his *Miranda* rights.  *See Manna*, 534 N.W.2d at 644.

Sanchez also asks us to apply plain-error review to his *Miranda* claims.  Our supreme court has recently and "repeatedly rejected plain error review."  *State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021).  "We are not at liberty to overturn Iowa Supreme Court precedent."  *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa 1990).  We decline to apply plain-error review here.

### III. Laboratory Report

Sanchez argues the court should have excluded from evidence a laboratory report from DCI and the substances tested for the report.  The report summarized the test results from four different items, marked as exhibits located in the bedroom and submitted to DCI, and the testing showed the substances amounted to approximately 523.9 grams of cocaine salts.  Sanchez notes the report identifies the suspect as "Jose Sanchez" but his name is "Jesus Sanchez."  He also notes the report lists the agency case number as 16-13530QM, but the substances in evidence show a different punctuation in the agency case number of 16/13530QM.  Finally, he asserts some of the substances have been sealed since they were supposedly collected from the bedroom and were never tested.

The supreme court recently analyzed a similar objection to a DCI report and the substances supposedly tested for the report as a chain-of-custody objection.  *See State v. Middlekauff*, 974 N.W.2d 781, 805–06 (Iowa 2022).  We review a ruling on a chain-of-custody objection for abuse of discretion.  *See id.* at 805.

When considering the admissibility of suspected drugs and their test results, "the State is required to prove a chain of custody sufficiently elaborate to make it reasonably probable no tampering or substitution occurred"; however, "[a]bsolute certainty is not required." *Id.* (citations omitted). "When [the] trial court has determined that the identification of the exhibit is sufficient, contrary speculation affects the weight of the evidence but not its admissibility." *Id.* (alteration in original) (quoting *State v. Gibb*, 303 N.W.2d 673, 681 (Iowa 1981)).

Deputy Hill testified to his procedure for labeling and sealing the suspected drugs found in the bedroom. The DCI criminalist testified to his procedure for receiving and testing the suspected drugs. The State introduced into evidence these substances and photographs of the substances when they were found in the bedroom, and both Deputy Hill and the DCI criminalist confirmed the substances in evidence were the same substances they handled as part of the investigation. This evidence satisfies the State's burden to show a reasonable probability no tampering or substitution occurred. *See id.* Any errors in the suspect's name or agency's use of punctuation in the same case number or questions about whether any substance was actually tested go to the weight of the evidence, not its admissibility. *See id.* Thus, the district court did not abuse its discretion in admitting the report and the suspected drugs.

## IV. Sufficiency of the Evidence

Finally, Sanchez challenges the sufficiency of the evidence supporting his convictions. "We review the sufficiency of the evidence for correction of errors at law." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) (quoting *State v. Buman*, 955 N.W.2d 215, 219 (Iowa 2021)). "Substantial evidence is evidence

sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)).

Sanchez focuses his arguments on his conviction for possession with intent to manufacture or deliver more than 500 grams of "[c]ocaine, its salts, optical and geometric isomers, or salts of isomers." Iowa Code § 124.401(1)(a)(2)(b). He also argues that if the evidence is insufficient to prove he possessed contraband, the evidence is insufficient to prove he failed to affix a tax stamp to contraband.

First, Sanchez challenges the evidence proving the substances found in the bedroom are prohibited under section 124.401(1)(a)(2)(b). The DCI report, as supported by the criminologist's testimony, showed the substances tested are cocaine salts, which is one of the prohibited substances under section 124.401(1)(a)(2)(b). Sanchez argues these results showing cocaine salts are insufficient to convict him because the trial information alleged the substances are "[c]ocaine." According to Sanchez, cocaine and cocaine salts are different substances that must be specifically charged. Even if we assume Sanchez is correct, an error in the trial information does not affect the judgment unless the error "prejudice[s] a substantial right of the defendant." Iowa R. Crim. P. 2.4(7). Sanchez makes no argument the error caused him prejudice. Possession with intent to manufacture or deliver both cocaine and cocaine salts is prohibited under the same section, 124.401(1)(a)(2)(b), and the State's evidence to prove the

offense is essentially identical regardless of the substance involved. Therefore, any error in the trial information does not render the evidence insufficient for conviction under section 124.401(1)(a)(2)(b).

Sanchez challenges the validity of the test results in the DCI report. He repeats his arguments from section III above, arguing identification errors in the report and questions about whether the substances were ever unsealed for testing mean the test results are unreliable. As stated above, these arguments go to the weight of the report. Again, Deputy Hill and the DCI criminologist testified to their procedures in handling the substances, and both witnesses identified the substances submitted into evidence as the same substances they handled during the investigation. Thus, the court was entitled to rely on the test results in reaching its decision. Taking the evidence in the light most favorable to the State, the test results are sufficient to prove the substances found were prohibited under section 124.401(1)(a)(2)(b).

Second, Sanchez argues the evidence is insufficient to prove he possessed the substances found in the bedroom. The State focuses on constructive possession. *See State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) (stating constructive possession exists when the "contraband was in [the defendant's] physical possession at some point in time"). Sanchez argues the State did not prove he ever possessed the substances because the record does not show when he was last in the bedroom and Deputy Hill testified at least one other person was in the home when officers searched it. *See State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002) (finding the defendant's joint control of a premises does not support an inference the defendant had possession or control of contraband found in the

premises). Officer Raya testified Sanchez told him he purchased the cocaine and it was in his bedroom. Deputy Hill testified he found the cocaine in the bedroom as Sanchez described. Officers also found Sanchez's pay stub in the bedroom, supporting a finding the room belonged to Sanchez. This testimony is sufficient to support finding Sanchez had constructive possession of the cocaine in the bedroom.

Third, Sanchez argues there was no evidence he was manufacturing or delivering the cocaine. However, the State points to considerable circumstantial evidence of intent to deliver. *See State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996) ("Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence."). Sanchez had a large quantity of cocaine in the bedroom, much more than expected for personal use. Some of the cocaine was packaged into one-ounce baggies. Officers also found more than $14,000 in cash, digital scales, and cellophane and plastic baggies in the bedroom, which Deputy Hill testified is typical when selling cocaine. This evidence is sufficient to find Sanchez intended to deliver the cocaine found in the bedroom.

## V. Conclusion

We reject Sanchez's challenges to his waiver of *Miranda* rights, find the district court did not abuse its discretion in admitting a DCI report and the tested substances, and find sufficient evidence to support Sanchez's convictions.

**AFFIRMED.**