**STATE of Iowa, Appellee,**

v.

**Victor MIRANDA, Appellant.**

**No. 02–1837.**

Supreme Court of Iowa.

Dec. 17, 2003.

Linda Del Gallo, State Appellate Defender, and Martha Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Cristen C. Odell, Assistant Attorney General, John P. Sarcone, County Attorney, and Robert DiBlasi, Assistant County Attorney, for appellee.

STREIT, Justice.

Victor Miranda claims police violated his *Miranda* rights when he was handcuffed and asked who owned marijuana found in his bedroom. He also alleges he was denied effective assistance of counsel in waiving his right to a jury trial, because his attorney failed to ensure the judge tell him he could participate in voir dire and his jury would be drawn from the community.

In our de novo review, we conclude the police unlawfully subjected Miranda to custodial interrogation without giving him the required *Miranda* warnings; the district court, therefore, should have suppressed an admission Miranda made concerning his ownership of the drug. Because we find Miranda waived his right to a jury trial knowingly, voluntarily, and intelligently, we reject his ineffective-as-

sistance claim. We reverse and remand for further proceedings.

## I. Facts and Prior Proceedings

One night in February 2002, Officers Nading and Banks of the Des Moines Police Department investigated a loud party at an apartment in our capital city. They knocked and a young woman opened the door. The smell of marijuana wafted out of the apartment.

The police asked the woman if they could come in and she let them in. Once inside the apartment, the police saw four males, some marijuana joints, and an assortment of knives in the living room. They also saw gang graffiti on the walls.

In order to make sure it was safe, Officer Nading went to check the two bedrooms in the apartment, while Officer Banks remained in the living room. Nading opened the door to the front bedroom, and turned on the lights. Nading discovered the room in complete disarray. On one side of the room laid Victor Miranda and a teenage boy on a mattress. On the other side of the room was some marijuana on top of a dresser. There was also a bag containing two to three ounces of marijuana in the dresser's open top drawer. Nading brought Miranda and the boy into the living room.

Officer Nading then checked the back bedroom. He saw more knives and encountered four or five more people. Nading brought these individuals into the living room, as well.

Officer Nading asked Miranda if the front bedroom was his. After Miranda said "Yes," Nading handcuffed Miranda and the boy. Nading then asked the entire group who owned the marijuana. Miranda fessed up to owning the marijuana. Nading removed the handcuffs from the boy, and allowed everyone but Miranda to leave. The police arrested Miranda. Eventually, they discovered Miranda was renting the apartment.

The county attorney charged Miranda with possession of a controlled substance with intent to deliver, a class "D" felony. *See* Iowa Code § 124.401(1)(*d*) (2001). Miranda filed a motion to suppress, in which he alleged his admission was the product of an unconstitutional custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); U.S. Const. amends. V, XIV.

The district court denied Miranda's motion to suppress. It recognized Miranda was handcuffed, but held that "[u]p to the point of his admission he was not in custody." The court noted that once Miranda admitted he owned the marijuana, the police allowed all of the other people in the apartment to leave. The court concluded that "[u]nder a totality of the circumstances, [Miranda's] admission was voluntary.... His *Miranda* rights were not violated."

Prior to trial, Miranda signed and filed a written waiver of his right to a jury trial. He appeared in open court and, following a colloquy with the judge, waived his right to a jury trial and stipulated to the minutes of testimony. Miranda's attorney told the presiding judge the defendant was so stipulating in order to preserve for appeal the issue of the ruling on the motion to suppress. Miranda's attorney also filed a motion for a judgment of acquittal, which again alleged Miranda's *Miranda* rights were violated.

The district court, citing the ruling on the motion to suppress, denied Miranda's motion. The district court adjudged Miranda guilty, and sentenced him.

Miranda appeals his conviction, and presents two issues for our review: (1) Did the district court err in denying Miranda's

motion to suppress? and (2) Was Miranda's trial counsel ineffective for failing to challenge an allegedly defective waiver of his right to a jury trial?

## II. Scope of Review

■■■■ Where the defendant alleges the district court improperly refused to suppress statements made in violation of his *Miranda* rights, our review is de novo. *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). Although "we 'make an independent evaluation of the totality of the circumstances as shown by the entire record' ... [w]e give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses." *Id.* (quoting *State v. Howard*, 509 N.W.2d 764, 767 (Iowa 1993)).

■■■■ Our standard of review for an ineffective assistance of counsel claim involving the adequacy of a jury trial waiver is de novo. *State v. Stallings*, 658 N.W.2d 106, 108 (Iowa 2003). Ineffective assistance of counsel claims are generally "preserved for postconviction relief" but "[w]e will resolve the claim on direct appeal ... when the record adequately presents the issue." *Id; State v. Buck*, 510 N.W.2d 850, 853 (Iowa 1994). We believe the record in this case is sufficient for us to rule upon the issue on direct appeal.

## III. The Merits

On appeal, the crux of the dispute is whether the defendant was in custody for purposes of *Miranda* when he admitted owning the marijuana found in his bedroom. The defendant argues he was in custody because the officers handcuffed him. He also points out that police only handcuffed the two persons found in the room with the marijuana.

In response, the State notes this entire episode occurred in the defendant's own apartment, the police were outnumbered,

and, in any event, the police questioning here did not constitute the sort of "coercive environment" which *Miranda* was designed to guard against. In the alternative, the State argues that even if Miranda were subject to "custodial interrogation," any error in admitting his incriminating statement was harmless.

### A. *Miranda*

The Fifth Amendment to the United States Constitution, which the United States Supreme Court has incorporated into the Due Process Clause of the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (holding Fifth Amendment privilege against self-incrimination applicable to the states). In *Miranda*, the United States Supreme Court held this constitutional privilege against self-incrimination applies to "custodial interrogation" by police. *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. Specifically, the Court held

that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege. . . .

*Id.* at 478–79, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

■■■■ In a passage which is now familiar to much of the American public, the Court mandated persons subjected to custodial interrogation must first be informed of their constitutional rights to remain silent and to have an attorney present during questioning. *Id.* They must also be ad-

vised "anything [they say] can be used against [them] in a court of law, ... and that if [they] cannot afford an attorney one will be appointed for [them] prior to any questioning" if they wish. *Id.* If this prophylactic measure is not carried out, evidence obtained as a result of a custodial interrogation is inadmissible. *Id.*

■ The State does not deny the police failed to apprise the defendant of his *Miranda* rights before he admitted to owning the marijuana. We must, therefore, answer one ultimate question: Was the defendant entitled to *Miranda* warnings? "*Miranda* warnings are not required unless there is both custody and interrogation." *State v. Countryman,* 572 N.W.2d 553, 557 (Iowa 1997) (citations omitted); *accord Turner,* 630 N.W.2d at 607 (quoting *State v. Davis,* 446 N.W.2d 785, 788 (Iowa 1989)).

### 1. Custody

■ The critical issue in this case is whether Miranda was in custody, as articulated in *Miranda* and its progeny, when the police asked who owned the marijuana. The *Miranda* safeguards "become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 335 (1984) (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983)). "[A] court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Countryman,* 572 N.W.2d at 557–58 (quoting *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293, 298 (1994) (citations and internal quotation omitted)).

■ In this inquiry, we apply an objective test. "[T]he appropriate test [is] 'whether a reasonable person in the [defendant's] position would understand himself to be in custody.'" *Countryman,* 572 N.W.2d at 558 (quoting *State v. Deases,* 518 N.W.2d 784, 789 (Iowa 1994)). We consider four factors:

(1) the language used to summon the individual;

(2) the purpose, place, and manner of interrogation;

(3) the extent to which the defendant is confronted with evidence of [his] guilt; and

(4) whether the defendant is free to leave the place of questioning.

*Countryman,* 572 N.W.2d at 558. Analyzing the facts of the present case using these four factors, we conclude the defendant was in custody as articulated in *Miranda* and its progeny.

Although the record does not clearly indicate what language the police used with the defendant, the police clearly took charge of his movement. Upon discovering the marijuana, the police brought Miranda and the boy into the living room and handcuffed them.

■ Nor did Miranda initiate contact with the police. "[C]ustodial interrogation [means] questioning *initiated* by law enforcement officers." *United States v. Griffin,* 922 F.2d 1343, 1351 (8th Cir. 1990) (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706 and adding emphasis). "[W]hen the confrontation between the suspect and the criminal justice system is instigated at the direction of law enforcement authorities, rather than the suspect, custody is more likely to exist." *Id.* (citations omitted).

■ It is true this entire episode occurred in the defendant's own home, and

"the general rule is that in-home interrogations are not custodial for purposes of *Miranda.*" *State v. Evans,* 495 N.W.2d 760, 762 (Iowa 1993); *see, e.g., State v. Davis,* 446 N.W.2d 785, 788 (Iowa 1989) (concluding defendant interviewed at home not entitled to *Miranda* warnings). *But see Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969) (suspect in custody even though in home). This was not the run-of-the-mill interview at a suspect's home. Instead, police instigated an encounter in which they entered Miranda's apartment and bedroom without his personal consent, while he lay on his mattress with the lights off and the door closed. Miranda first encountered police when they opened the door to his bedroom and turned on the light. Upon finding the marijuana, the police brought Miranda into the living room, where they handcuffed and questioned him. Simply put, the usual comforts of home were taken away from Miranda; in this case the manner of the questioning belied its location.

We recognize that when the police officers asked the group assembled in the living room who owned the marijuana, the defendant was surrounded by his guests. The presence of a defendant's guests during police questioning further lessens the pressures against which *Miranda* was designed to protect. "[C]ustody is less likely to be deemed present when the questioning occurred in the presence of the suspect's friends or other third parties...." LaFave et al., *Criminal Procedure* § 6.6(f), at 539 (2d ed.1999). In this case, however, other circumstances show the defendant was in custody for purposes of *Miranda.*

It is also true the questioning did not last long; it merely consisted of a single inquiry directed to two handcuffed individuals and others. Nonetheless,

[w]hile *Miranda* was most obviously concerned with the "marathon" routine of questioning a suspect, custody has been found in relatively brief interrogations where the questioning is of a sort where "the detainee is aware that questioning will continue until he provides his interrogators the answers they seek."

*Griffin,* 922 F.2d at 1348–49 (citations omitted). Miranda was presented with strong evidence of his guilt, and there is little reason to believe the officers would not have asked more questions if Miranda had not incriminated himself with such alacrity.

Critically, the fact Miranda was handcuffed strongly indicates he was not free to leave. *State v. Lescard,* 128 N.H. 495, 517 A.2d 1158, 1159 (1986) (fact defendant was handcuffed an indication of custody); *see also* LaFave, et al., *Criminal Procedure* § 6.6(f), at 538–39 ("A court ... is likely to find custody if there was physical restraint such as handcuffing...."). To hold otherwise would wrongly suggest Miranda was free to leave while securely anchored to police property.

Importantly, there is no evidence the police told Miranda he was not under arrest. Nor did the police tell Miranda he was free to leave his own apartment or that he could terminate the interview at will.

The most obvious and effective means of demonstrating that a suspect has not been taken into custody or otherwise deprived of freedom of action is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will.

*Griffin,* 922 F.2d at 1349 (citation omitted).

Considering the totality of the circumstances, we conclude the defendant was in

custody for purposes of *Miranda* at the time police asked the group who owned the marijuana. We now turn to examine whether Miranda was interrogated. *See Countryman*, 572 N.W.2d at 557 ("*Miranda* warnings are not required unless there is both custody and interrogation." (citations omitted)).

## 2. Interrogation

 Interrogation, as understood in the context of a *Miranda* claim,

> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*State v. Peterson*, 663 N.W.2d 417, 424 (Iowa 2003) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–08 (1980)). Neither the district court nor the parties directly address whether a question directed at a group as a whole may constitute interrogation under *Miranda*, except insofar as the State used this fact in its attempt to persuade us Miranda was not in custody.

 In its brief, the State argues if a defendant was not in custody, he was not interrogated. While it is true a defendant who was not in custody was not subject to *custodial interrogation*, in this case we have determined Miranda *was* in custody. For the *Miranda* safeguards to apply, then, police must interrogate the defendant. Because the State does not separately address this issue, it has waived any argument to the contrary. *Hollingsworth v. Schminkey*, 553 N.W.2d 591, 596 (Iowa 1996). Even if the State had not waived its argument, in the present case the police, in asking the group, two of which were handcuffed, who owned the marijua-

na, engaged in "express questioning . . . (other than those normally attendant to arrest and custody) that [they] should know are reasonably likely to elicit an incriminating response from the suspect." *Peterson*, 663 N.W.2d at 424 (quoting *Innis*, 446 U.S. at 300–01, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 307–08). This is not, for example, a case where the defendants incriminating statements were prompted by routine biographical or booking questions. *See, e.g., State v. Sallis*, 574 N.W.2d 15, 18 (Iowa 1998) (routine biographical statements made by a defendant during a pretrial release interview not the product of interrogation).

We find Miranda's admission was the product of an unconstitutional custodial interrogation. The district court erred in not granting the defendant's motion to suppress. *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

## B. Harmless Error

 In the alternative, the State argues the erroneous admission into evidence of Miranda's incriminating statement was harmless error. Reversal is not required if the error is harmless. *See, e.g., Peterson*, 663 N.W.2d at 430–35 (applying harmless error analysis in the context of a *Miranda* violation). In determining whether error is harmless,

> [t]he inquiry is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. . . . "To establish harmless error, the State must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained". . . . [W]e must ask whether the force of the evidence is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have

been the same without the erroneously admitted evidence. Only when the effect of the erroneously admitted evidence is comparatively minimal to this degree can we say that there is no reasonable possibility that such evidence might have contributed to the conviction. *Id.* at 432 (emphasis in original, citations omitted). On appeal, the State argues any error was harmless, because Miranda was in constructive possession of the marijuana. In support of its claim, the State points out the marijuana was found in Miranda's bedroom and in a place immediately accessible to him. *See generally State v. Cashen,* 666 N.W.2d 566, 569–71 (Iowa 2003) (summarizing law of constructive possession in Iowa).

In finding Miranda guilty of possession of a controlled substance with intent to deliver, the district court set forth its reasoning in a written ruling. The court relied upon the minutes of testimony, to which Miranda stipulated. The minutes showed (1) marijuana was found in the defendant's bedroom; (2) in light of the training and experience of a seasoned police officer, the amount of marijuana and the manner in which it was packaged were consistent with marijuana trafficking; and (3) the defendant admitted owning the marijuana. The State did not urge a constructive possession theory at trial, and the district court did not rely upon it in adjudging Miranda guilty.

Without reaching the merits of the constructive possession claim, we cannot say the State has proved, beyond a reasonable doubt, that the court's verdict would have been the same without the erroneously admitted admission. We cannot, therefore, say the error was harmless.

## C. Ineffective Assistance of Counsel—Jury Trial Waiver

■ In light of our recent decision in *Stallings* regarding the adequacy of a jury trial waiver, Miranda claims he was denied effective assistance of counsel. Although Miranda submitted a written waiver of his right to a jury trial and the court conducted an extensive in-court colloquy with him, Miranda points out the judge who accepted his guilty plea did not inform him he (1) was waiving his right to have twelve members *of the community* decide his guilt and (2) would have an opportunity to take part in the jury selection process. Miranda, therefore, asks us to conclude his counsel was ineffective and presume prejudice.

■ "To establish an ineffective-assistance claim, [the defendant] must show that (1) his counsel failed to perform an essential duty, and (2) prejudice resulted." *Stallings,* 658 N.W.2d at 108 (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). Having duly considered all the arguments of the parties, we conclude Miranda was not denied effective assistance of counsel because his trial counsel did not fail to perform an essential duty. As explained in two companion cases also filed today, well-settled legal doctrine, as set forth in *State v. Lawrence,* 344 N.W.2d 227 (Iowa 1984), controls our analysis in this case. *See State v. Liddell,* 672 N.W.2d 805, 811 (Iowa 2003); *State v. Spies,* 672 N.W.2d 792, 799 (Iowa 2003).

■ In *Lawrence,* we stated "a written jury waiver taken in compliance with rule 16(1) is prima facie evidence that the waiver was voluntary and intelligent. When the defendant subsequently attacks its validity, he bears the burden of proving otherwise." 344 N.W.2d at 230. Because there is no evidence in the record, nor any allegation on appeal, that Miranda's signed, written waiver was not knowing, voluntary, and intelligent, we refuse to

conclude Miranda's trial counsel failed to perform an essential duty. Where the evidence establishes a knowing, voluntary, and intelligent waiver, trial counsel has no duty to preserve the issue for appeal. *See Buck*, 510 N.W.2d at 853. Miranda's ineffective assistance of counsel claim must, therefore, fail. *Id.*

■ In *State v. Liddell*, a companion case filed today, we partially overrule *Lawrence* to require some in-court colloquy to ensure jury trial waivers are knowing, voluntary, and intelligent. 672 N.W.2d at 811–14 (interpreting "on the record" to require an in-court colloquy). This fact, of course, does not affect our decision in this case; "it would be patently unfair to adjudge Liddell's counsel ineffective for failing to foresee [that] decision, which diverges from precedent . . . it is not necessary to know what the law will become in the future to provide effective assistance of counsel." *Id.* at 814. "Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel." *Spies*, 672 N.W.2d at 800 (citations omitted).

Even if our decision in *Liddell* applied retroactively, in this case the judge conducted an in-court colloquy which clearly shows Miranda's waiver was knowing, voluntary, and intelligent. For in *Liddell* we stated

> [i]n conducting an in-court colloquy, it is important to recognize the ultimate standard to be complied with is whether the waiver is knowing, voluntary, and intelligent. To this end, a court should ascertain whether the defendant understands the difference between jury and non-jury trials, through an in-court colloquy. This inquiry may involve informing the defendant:
>
> 1. Twelve members of the community compose a jury;

2. The defendant may take part in jury selection;

3. Jury verdicts must be unanimous;

4. The court alone decides guilt or innocence if the defendant waives a jury trial; and

5. Neither the court nor the prosecution will reward the defendant for waiving a jury trial.

> *We must point out, however, that these five subjects of inquiry are not "black-letter rules" nor a "checklist" by which all jury-trial waivers must be strictly judged. They merely point towards a knowing, voluntary, and intelligent waiver. The ultimate inquiry remains the same: whether the defendant's waiver is knowing, voluntary, and intelligent. . . . Substantial compliance is acceptable.*

*Liddell*, 672 N.W.2d at 813–14 (citing, in part, *Stallings*, 658 N.W.2d at 111) (emphasis added and citations omitted).

In the present case, the judge—after making certain the defendant had filed a written waiver of his right to a jury trial—conducted an extensive in-court colloquy with Miranda. The court informed the defendant (1) by waiving his right to a jury trial, the judge would decide the case on the minutes of testimony alone; (2) if the defendant would have asserted his right to a jury trial, the State would have provided him an attorney, if he was unable to afford one; (3) the defendant would have had the opportunity to testify at his trial; (4) if the defendant had chosen not to testify, no one could force him to do so, nor use his silence against him; (5) at a jury trial, the State would have to bring witnesses in to testify, which he could cross-examine; (6) the State would have to prove guilt beyond a reasonable doubt to the satisfaction of twelve jurors; (7) the decision of the jurors would have to be unanimous; (8) if

the defendant could not afford to bring witnesses into court, the public would pay for him to do so; (9) by waiving his right to a jury trial, the court alone would decide the case and in the same manner as a jury would; and (10) explained the maximum punishment for the crime for which he was charged and that a conviction would require the state to prove his guilt beyond a reasonable doubt.

The defendant claims trial counsel breached an essential duty when she failed to ensure that the district court inform him that at a jury trial he would (1) be permitted to take part in jury selection and (2) be entitled to a jury of twelve persons *drawn from the community*. On account of this failure and our decision in *Stallings*, the defendant urges us to find defense counsel failed to perform an essential duty.

Even though Miranda's trial counsel did not ensure the court met each of the five specific exhortations of *Stallings*, in this case there is no question Miranda waived a jury trial knowingly, voluntarily, and intelligently. As we indicated in *Liddell*, the five subjects of inquiry listed in *Stallings* are *not* a checklist; substantial compliance is acceptable. *Id.* Commonsense should tell a defendant, for example, that his twelve member jury will be drawn from his community. In this case, there is overwhelming evidence that Miranda's waiver was voluntary; indeed, the decision to waive a jury trial appears wholly tactical. *See State v. Combs*, 316 N.W.2d 880, 884 (Iowa 1982). Miranda has not proven his trial counsel failed to perform an essential duty, and was not, therefore, denied effective assistance of counsel.

### IV. Conclusion

Miranda was subjected to an unconstitutional custodial interrogation. Furthermore, the admission into evidence of an incriminating statement which resulted from this violation was not harmless error. He was not denied effective assistance of counsel; his trial counsel did not fail to perform an essential duty on account of an allegedly defective jury trial waiver. We reverse and remand for further proceedings.

**REVERSED AND REMANDED.**