# IN THE COURT OF APPEALS OF IOWA

No. 17-2031
Filed June 19, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**RICKY DEAN RYAN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, David M. Porter (suppression motion) and Karen A. Romano (trial), Judges.

Ricky Dean Ryan appeals after a jury found him guilty of three drug-related charges. **AFFIRMED.**

Karmen Anderson of Anderson & Taylor, P.L.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Vogel, C.J., and Carr and Gamble, S.J.*  May, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Chief Judge.**

A jury found Ricky Dean Ryan guilty on three drug-related charges. On appeal, he challenges the denial of his motion to suppress evidence and the sufficiency of the evidence supporting his convictions.

**I. Background Facts and Proceedings.**

On February 27, 2017, Ryan attended a scheduled appointment for drug testing, as required by conditions of his parole. When he submitted a urine specimen, the staff member monitoring the collection believed Ryan was using a device with fake urine to hide his drug use. The staff member told Ryan to show him the device or leave in violation of parole. Ryan denied using the device but refused to allow the staff member to check for it. He later admitted to having used the device.

Carrie Schneider, a Probation/Parole Officer II with the Fifth Judicial District Department of Correctional Services, supervised Ryan while on parole. In light of Ryan's use of a device during drug testing, Officer Schneider suspected Ryan was using methamphetamine. Ryan did not follow through with offered drug treatment, and he later admitted to Officer Schneider that he had recently used methamphetamine. Officer Schneider then determined a home visit would be appropriate. Because only a Probation/Parole Officer III may perform home visits, Officer Schneider submitted a surveillance request asking an officer of that rank to check Ryan's apartment for signs of alcohol or drug use. Officer Randall Schultz, a Probation/Parole Officer III, received the request. Officer Schultz is also a certified law enforcement officer and a member of the fugitive unit for the Fifth Judicial District Department of Correctional Services.

On March 13, 2017, Officer Schultz and another officer went to Ryan's apartment to conduct the home visit. Officer Schultz heard voices within the apartment and knocked twice before Ryan answered the door. The officers informed Ryan they were there to conduct a home visit, and Ryan allowed them into his apartment.

When the officers entered, they found two other men seated in the living room. The officers saw a digital scale on top of a coffee table along with what Officer Schultz believed to be a "tooter straw" used to ingest methamphetamine.[1] Officer Schultz also saw what appeared to be a handgun near the coffee table, though he later determined it was a BB gun. Several "large hunting-style knives" were on the floor next to the table.

Due to the presence of weapons in plain view, the officers placed Ryan in handcuffs to ensure their safety while they searched the immediate area. The officers also asked to search the two men in the apartment, and they consented. When officers found nothing illegal on the men, they asked the men to leave the apartment.

During their search of the living-room area, the officers found a large sum of currency and two large bags containing smaller bags that held a substance later determined to be methamphetamine. The currency and bags of methamphetamine were located on the floor next to the chair positioned nearest to the coffee table, which had been unoccupied when the officers entered the

---

[1] Officer Schultz testified at the suppression hearing that a tooter straw "could be several things, but in this instance was a red piece of plastic straw . . . that's cut into portions or can be cut into portions and used to ingest narcotics." The officer testified that "in relation to the digital scale, we believed it to be paraphernalia."

4

apartment. Packaged along with the methamphetamine was a small bag containing a trace amount of marijuana.

Ryan told the officers the methamphetamine belonged to him and admitted he sells methamphetamine to supply his habit. Because the officers found what they believed to be evidence of a crime, they contacted a narcotics investigator. Officer Schultz then arrested Ryan for violating the terms of his parole and transported him to jail.

The State charged Ryan with possession of methamphetamine with intent to deliver, a class "B" felony; failure to possess a tax stamp, a class "D" felony; and possession of marijuana, a class "D" felony. Following trial, a jury found Ryan guilty as charged.

**II. Motion to Suppress.**

Before trial, Ryan moved to suppress the evidence seized during the home visit. He alleged the officers violated his right to be free from unreasonable searches and seizures under both the United States and Iowa constitutions. The district court denied the motion, finding the entry into his apartment fell under the special-needs exception to the warrant requirement. The court also found Ryan, while temporarily restrained, was not in custody during or following the search of the living room, and the statements he made concerning the methamphetamine were therefore admissible.

We review the denial of a motion to suppress that implicates constitutional rights de novo. *See State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). We independently evaluate the totality of the circumstances as shown by the entire record. *See id.* While we give deference to the district court's fact findings given

its opportunity to view the witnesses and evaluate their credibility, we are not bound by them.  *See id.*

**A.  Search after entry of the home.**

Warrantless searches are valid under the United States and Iowa constitutions only if they fall within one of the recognized exceptions to the warrant requirement.  *See State v. Moriarty*, 566 N.W.2d 866, 868 (Iowa 1997).  Our supreme court has adopted a special-needs exception to the warrant requirement, which "authorizes parole officers to search the home of a parolee without a warrant for purposes of parole supervision."  *State v. King*, 867 N.W.2d 106, 127 (Iowa 2015).  Under this narrow exception,

> parole officers have a special need to search the home of parolees as authorized by a parole agreement and not refused by the parolee when done to promote the goals of parole, divorced from the goals of law enforcement, supported by reasonable suspicion based on knowledge arising out of the supervision of parole, and limited to only those areas necessary for the parole officer to address the specific conditions of parole reasonably suspected to have been violated.

*Id.* at 126–27.  In denying the motion to suppress, the district court found these prerequisites were met.

Ryan argues the special-needs exception does not apply here because (1) law enforcement officers conducted the search rather than his regular parole officer and (2) the purpose of the search was for investigation rather than to further the objectives of parole supervision.

The district court rejected Ryan's "subtle assertion that there is a distinction between [Officer Schneider] and Officer Schultz," noting that our supreme court declined to accept such a distinction in *State v. Brooks*, 888 N.W.2d 406, 415–16 (Iowa 2016).  In that case, the defendant's regular probation officer asked two other

probation officers—one of whom was a member of the fugitive unit of the Fifth Judicial District Department of Correctional Services—to visit the defendant's home. *Brooks*, 888 N.W.2d at 415. Our supreme court stated:

> The record indicates that the Fifth Judicial District Department of Correctional Services has set up a separate unit of probation officers that have special training and carry firearms so they can deal with high-risk situations. In our view, this does not alter the basic analysis . . . . Some probationers present more risks than others, for example if they have been actively using methamphetamine. Some probation-related duties are more hazardous than others. It would not make sense to adopt a rule that a probation mission ceases to be a probation mission just because the probation officer is carrying a firearm for protection. The focus should remain, rather, on the activity itself: Was the probation officer engaged in supervision of a probationer (which can include an arrest for a probation violation) or was she or he conducting a separate law enforcement investigation?

*Id.* at 416. Applying this holding, the district court concluded the actions of both Officer Schneider and Officer Schultz were "entirely consistent with the primary mission of probation/parole."

We agree that the special-needs exception to the warrant requirement applies. The record shows that Officer Schneider submitted a surveillance request because she suspected Ryan had used a device with fake urine during a drug test to hide his methamphetamine use. Ryan later admitted to using the device and methamphetamine. The request for a home visit to determine whether Ryan was using alcohol or drugs, in violation of the terms of his parole, was related to supervision of a parolee rather than a separate law enforcement investigation. Furthermore, although Officer Schultz is a certified law enforcement officer, he is employed as a parole officer with the rank necessary to conduct home visits. Officer Schultz testified that his role is not to investigate crimes but to check for any violations of a person's parole or probation requirements. There is no

requirement that the parole officer Ryan normally reported to conduct the home visit for the special-needs exception to apply. Accordingly, we affirm the denial of Ryan's motion to suppress relating to the evidence seized during the search of Ryan's apartment.

### B. Statements.

Before law enforcement may interrogate a person in custody, they must advise the person of their rights under the Fifth Amendment to the United States Constitution. *See State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015). In determining whether statements are admissible over a Fifth Amendment challenge, we must first ascertain whether the person was in custody. *See id.* A person is in custody once "freedom of action is curtailed to a degree associated with formal arrest." *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). In making this determination, we consider whether a reasonable person would have understood the situation to be one of custody, considering the following four factors: "(1) the language used to summon the individual; (2) the purpose, place, and manner of interrogation; (3) the extent to which the defendant is confronted with evidence of her guilt; and (4) whether the defendant is free to leave the place of questioning." *See id.* at 172 (quoting *State v. Countryman*, 572 N.W.2d 557, 558 (Iowa 1997)).

Ryan concedes that the interrogation took place in his living room and that the record does not indicate the officers were hostile or aggressive in the manner in which they questioned him. He notes, however, that the officers handcuffed him when they saw the weapons, indicating he was not free to leave. The district court rejected this argument:

[T]he fact that [Ryan] was handcuffed does not automatically establish that he was in custody for Fifth Amendment purposes. Rather, the fact that [Ryan] was handcuffed is but one of many factors that must be considered under the totality of the circumstances. Under a Fourth Amendment analysis, Officer Schultz acted reasonably in performing a pat down and subsequently handcuffing [Ryan]. To be sure, handcuffing exerts a level of restraint, but was only utilized after Officer Schultz observed the knife and potential handgun, both of which were adjacent to [Ryan]. Under those circumstances, it was reasonable for Officer Schultz to temporarily restrain [Ryan] in order to obtain compliance and ensure officer safety. Moreover, there is no evidence in this record of force in relation to the handcuffing, or isolation in a secure location, or of confinement and coercion. The amount of force used by Officer Schultz was reasonable under a Fourth Amendment analysis and did not transform the home visit into a de facto arrest. As a result, the use of handcuffs on [Ryan] did not, by itself, rise to the level of an arrest or a custodial interrogation for Fifth Amendment purposes.

Although the act of handcuffing Ryan to assure officer safety was undoubtedly a seizure, not all seizures rise to the level of an arrest. *See State v. Nucaro*, 614 N.W.2d 856, 859 (Iowa Ct. App. 2000) ("It is well established that an officer may make a reasonable seizure of a person during an investigatory stop without it rising to the level of an arrest."). "The question of when a seizure becomes an arrest is one which is heavily driven by the facts in each case." *Id.* Although the use of handcuffs is one consideration, it is not determinative. *See State v. Wing*, 791 N.W.2d 243, 248 (Iowa 2010), *overruled on other grounds by State v. Williams*, 895 N.W.2d 856 (Iowa 2017). Handcuffing is permissible within the scope of a reasonable seizure for the limited purpose of affording officer safety. *See Nucaro*, 614 N.W.2d at 859; *see also Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether

he has probable cause to arrest the individual for a crime."). Whether the seizure rises to the level of an arrest depends on the reasonableness of the officers' actions. *Cf. State v. Scott*, 518 N.W.2d 347, 350 (Iowa 1994) ("[T]he use of a weapon by a peace officer as a protective measure during an investigatory stop does not convert the stop into an arrest if the officer's action is reasonable under the circumstances.").

Here, the officers handcuffed Ryan because they noted weapons in plain view, on or close to the coffee table, with drugs also in that immediate area. Although one weapon the officers initially thought to be a handgun was later determined to be a BB gun, several large hunting knives were also near Ryan. The officers handcuffed Ryan to ensure their safety while they remained in the apartment. As the district court found, handcuffing alone does not automatically establish Ryan was in custody for Fifth Amendment purposes; instead, handcuffing "was only utilized after Officer Schultz observed the knife and potential handgun, both of which were adjacent to Defendant."[2] Because the officers had reasonable

---

[2] We note the circumstances here differ from those in *State v. Miranda*, 672 N.W.2d 753, 759–61 (Iowa 2003), in which our supreme court found a defendant was in custody during an interrogation at his apartment. In that case, police officers observed marijuana joints and "an assortment of knives" in the living room of an apartment while responding to a noise complaint. *Miranda*, 672 N.W.2d at 756. The officers performed a safety check of the apartment and found Miranda lying on a mattress behind the closed door of a darkened bedroom. *Id.* Marijuana was visible inside a drawer of a dresser in the room. *Id.* The officers brought Miranda into the living room and handcuffed him after he admitted the bedroom was his. *Id.* When the officers asked the occupants of the apartment to whom the marijuana belonged, Miranda admitted it was his. *Id.* In determining the question of whether Miranda was in custody, the supreme court noted, "Critically, the fact Miranda was handcuffed strongly indicates he was not free to leave." *Id.* at 760. However, the *Miranda* court also observed:

> This was not the run-of-the-mill interview at a suspect's home. Instead, police instigated an encounter in which they entered Miranda's apartment and bedroom without his personal consent, while he lay on his mattress with the lights off and the door closed. Miranda first encountered police

grounds to believe the presence of the weapons in Ryan's immediate reach presented a safety risk, the act of handcuffing Ryan did not rise to the level of an arrest. *See Nucaro*, 614 N.W.2d at 860–61 ("We find handcuffing Nucaro was a seizure but did not rise to the level of an arrest and was reasonable under the specific circumstances. The seizing and detaining was undertaken to afford Officer Dickel an opportunity to safely complete a cursory weapons search of the area under Nucaro's immediate control and did not rise to the level of an arrest."). Accordingly, the incriminating statements he made at the apartment before he was informed of his rights are admissible, and we affirm the denial of Ryan's motion to suppress his statements.

### III. Sufficiency of the Evidence.

Ryan also asserts there is insufficient evidence to support his convictions for possession. Although he admits officers found drugs in his apartment, he argues that possession was not established because he was not the sole occupant of the apartment when the drugs were present, noting that two other men were in the apartment when the officers arrived.

We review claims regarding the sufficiency of the evidence to support a conviction for correction of errors at law. *See State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). In reviewing such claims, we view the evidence in the light most

---

when they opened the door to his bedroom and turned on the light. Upon finding the marijuana, the police brought Miranda into the living room, where they handcuffed and questioned him. Simply put, the usual comforts of home were taken away from Miranda; in this case the manner of the questioning belied its location.

*Id.* at 760. In contrast, the officers here arrived at Ryan's apartment to conduct a home visit rather than in response to a law enforcement call, Ryan personally consented to allowing the officers in his home, and the purpose of the interrogation was rehabilitative, rather than investigative.

favorable to upholding the verdict, making all inferences that may be reasonably deduced from the evidence. *See id.* We affirm if substantial evidence—that is, "evidence that a rational trier of fact could find the defendant guilty beyond a reasonable doubt"—supports the defendant's conviction. *Id.*

We first review the facts to determine whether Ryan had either actual or constructive possession of the drugs. *See State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016). Actual possession occurs when direct or circumstantial evidence shows that the contraband was on the defendant's person at one time. *See State v. Vance*, 790 N.W.2d 775, 784 (Iowa 2010). "Possession is constructive where the defendant has knowledge of the presence of the drugs 'and has the authority or right to maintain control of [them].'" *State v. Cashen*, 666 N.W.2d 566, 570 (Iowa 2003) (alteration in original) (quoting *State v. Maghee*, 573 N.W.2d 1, 10 (Iowa 1997)).

The existence of constructive possession depends on the unique facts of each case. *See Reed*, 875 N.W.2d at 705. Although it may be inferred when contraband is found on property in the defendant's exclusive possession, additional proof is needed when the premises are jointly occupied. *See id.* Proximity to the contraband—although pertinent—is not enough. *See id.* The factors we consider in determining whether constructive possession exists include:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Id.* (quoting *State v. Kern*, 931 N.W.2d 149, 161 (Iowa 2013)).

Viewed in the light most favorable to the verdict, the evidence clearly supports a finding that Ryan constructively possessed the methamphetamine and marijuana found in his apartment. In addition to the presence of the narcotics in Ryan's apartment, Ryan told Officer Schultz that the methamphetamine was his and he sold it in order to supply his habit. The marijuana was found with the packaged methamphetamine. A reasonable factfinder could infer that he was in possession of both.

Even without Ryan's admission of ownership, a reasonable jury could find Ryan possessed the drugs based on their location on the floor next to an unoccupied chair. Although there were two other men in the apartment when the officers arrived for the home visit, the men were seated approximately ten to fifteen feet from the drugs. The jury could reasonably deduce that Ryan had occupied the chair nearest the drugs before he answered the door. The evidence was therefore sufficient to support Ryan's convictions for possession of the methamphetamine and marijuana.

**IV. Conclusion.**

The home visit was conducted to carry out a legitimate parole supervision concern, and therefore, Ryan's motion to suppress was properly overruled. Because Ryan was not in custody when he made incriminating statements, those statements were admissible, and sufficient evidence supports his convictions.

**AFFIRMED.**