# IN THE COURT OF APPEALS OF IOWA

No. 24-0667
Filed March 5, 2025

**JIMMY JACOBY CARR,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, Judge.

An applicant appeals the denial of postconviction relief. **AFFIRMED.**

Jessica Donels of Parrish Kruidenier, L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, and Aaron Rogers, Assistant Attorney General, for appellee State.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

Jimmy Carr is serving a prison sentence not to exceed twenty-five years on convictions for robbery, possessing a firearm as a felon, and interference with official acts. In this postconviction appeal, he alleges that his attorneys provided subpar representation at his criminal trial. His claims are four-fold. First, counsel should have moved to sever the felon-in-possession charge or, at a minimum, sought a limiting instruction. Second, counsel should have moved to suppress his statement that he needed the firearm to protect himself. Third, he alleges cumulative error from counsel's omissions. And fourth, he contends the postconviction court erred in rejecting his belated claim that counsel was ineffective for not raising an intoxication defense. After reviewing the postconviction court's thorough and well-reasoned analysis of Carr's claims, we affirm the denial of relief.[1]

## I. Facts and Prior Proceedings

Carr's theft of a gas can from Bucky's convenience store turned into a robbery when he wrangled in the parking lot with a peace officer who was there getting a cup of coffee. Carr refused Council Bluffs police officer Mike Roberts's order to remove his hand from his pocket. As the officer reached for his handcuffs, Carr "stutter"-stepped, and the officer shoved him. As Carr fell back, a gun flew by Roberts and landed on the ground. The officer believed that Carr was moving toward the gun and shot him in the buttock. As Officer Roberts took Carr into

---

[1] As a baseline, we review postconviction rulings to correct errors at law. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). But when, as here, an applicant alleges ineffective assistance of counsel—a constitutional challenge—we switch to de novo review. *Smith v. State*, 7 N.W.3d 723, 725 (Iowa 2024).

custody, he asked what he was doing with the gun. Carr replied: "I need to protect myself."

The State charged Carr with attempted murder of a peace officer, robbery in the first degree, assault on a peace officer while displaying a dangerous weapon, interference with official acts while displaying a dangerous weapon, and felon in possession of a firearm. At trial, the State offered surveillance video depicting the encounter. The jury acquitted Carr of attempted murder but found him guilty of assault, interference with official acts, first-degree robbery, and felon in possession. On direct appeal, we vacated his assault conviction because it merged with the robbery offense. *State v. Carr*, No. 21-0707, 2022 WL 16985689, at *10 (Iowa Ct. App. Nov. 17, 2022). But we affirmed the other three counts. *Id*.

Carr applied for postconviction relief. In a September 2023 order, the court set a deadline of forty-five days before trial for any amendments to the application. In October 2023, Carr moved to amend his application. In his amended application, he claimed thirteen instances of ineffective assistance of counsel by his trial attorneys, Joseph Reedy and Andrew Munger.

Carr, Reedy, and Munger all testified at the postconviction trial in May 2024. After hearing their testimony, the district court rejected all of Carr's ineffective-assistance-of-counsel allegations. He now appeals.

## II.    Discussion

All four claims involve Carr's constitutional right to effective assistance of counsel. *See* U.S. Const. amend. VI (providing that in all criminal prosecutions, the accused shall have the assistance of counsel for their defense); *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (recognizing right to effective assistance of

counsel).[2]  To prove ineffective representation, Carr must show by a preponderance of the evidence that his counsel breached an essential duty resulting in prejudice.  *See Smith*, 7 N.W.3d at 726.  Failure to prove either a breach or prejudice defeats his claim.  *Id.*  On the duty prong, Carr must show his attorneys did not meet the performance standard required of reasonably competent practitioners.  *See id.*  Mistakes in judgment or unlucky strategies do not always mean counsel was ineffective.  *Id.*  As for prejudice, Carr must show a reasonable probability existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See id.* at 727.

### A.  Severance of Felon-in-Possession Charge

Carr first argues that his attorneys should have moved to sever the felon-in-possession charge from the other counts.[3]  He contends the charges were improperly joined under Iowa Rule of Criminal Procedure 2.6(1).[4]  But even if properly joined, Carr insists there was good cause to sever them.  He asserts that allowing the jury to learn that he was a felon damaged his prospects for acquittal on the other charges.  He contends that the postconviction court failed to apply the balancing test from *State v. Smith*, 576 N.W.2d 634, 636–37 (Iowa Ct. App. 1998)

---

[2]  Article I, section 10 of the Iowa Constitution provides a parallel right.  But Carr does not raise a state constitutional claim.

[3] In his issue heading, Carr states that "in the alternative" counsel was ineffective for failing to request a limiting instruction.  Because he does not pursue that alternative argument in the body of the argument, we decline to address it.  *See, e.g., Toney v. Parker*, 958 N.W.2d 202, 209 (Iowa 2021) (emphasizing that we look to the substance of the argument rather than the caption).

[4] That rule reads: "Two or more offenses that arise from the same transaction or occurrence, or from two or more transactions or occurrences constituting parts of a common scheme or plan, may be alleged and prosecuted as separate counts in a single indictment unless, for good cause shown, the trial court determines otherwise. . . ."

(overruled on other grounds by *State v. Owens*, 635 N.W.2d 478 (Iowa 2001)). *Smith* discussed weighing the defendant's right to a fair trial against "the State's interest in judicial economy." *Id.*

In assessing Carr's severance argument, we start with the testimony of his trial counsel at the postconviction hearing. Attorney Munger testified that he did consider filing a severance motion but did not believe it would have been granted. In his experience, "the court usually goes with judicial economy for these types of cases." To avoid the jury hearing about Carr's status as a felon, Munger suggested that his client plead guilty to the firearm-possession count. But Carr did not embrace that strategy. When asked if "the fact that the jury knew at the getgo that . . . Carr was a convicted felon" hurt his chances at trial, Munger conceded: "I don't think it helped."

Attorney Reedy likewise recalled the defense team's doubt that the court would have granted a severance motion. And they were "more concerned about the actual facts of his prior felony, which was an assault on an officer with a gun." Reedy believed having the jury hear those details "would have been extremely damaging" to Carr. As the postconviction court noted: "To counsel's credit, they prevented the jury from hearing that Carr's prior felony was an assault on a peace officer with a weapon."[5]

---

[5] Contrary to Carr's contention, the postconviction court did not fail to apply the *Smith* test and balance his interest in severing the felon-in-possession offense against the State's interest in keeping the counts together. It credited the attorneys' predictions that concerns of judicial efficiency would not prompt the trial court to sever the counts in Carr's case.

Turning to the joinder rule, the State argues that under rule 2.6(1), the crimes were rightly tried together because they were part of the same transaction or occurrence. The State reasons: "Carr's felon status explained his interference with official acts. He was trying to avoid being detected in possession of a firearm." We agree, so under that rule it would have been Carr's burden to show good cause for severance. *See* Iowa R. Crim. P. 2.6(1). And Carr's experienced criminal defense team was skeptical that the trial court would have accepted a good-cause argument.[6] In assessing the reasonableness of their skepticism, we ask the question posed by our supreme court in *Owens*: "Would it have been an abuse of trial court discretion *not* to find good cause to sever in these circumstances?" 635 N.W.2d at 482. Like the *Owens* court, we think not. *See id.* The State had a significant interest in trying the gun-possession case with the other offenses because Carr's status as a felon served as a motive for his conduct. The trial court in Carr's criminal case would have been within its discretion to deny a severance motion from defense counsel.

On these facts, we find that Munger and Reedy performed as reasonably competent practitioners. They did not breach a material duty by forgoing a severance motion that had little chance of success. *See State v. Halstead*, 362 N.W.2d 504, 508 (Iowa 1985) ("Defendant is not entitled to perfect representation, but only to that which is within the range of normal competency."). And they mitigated the prejudice to Carr by limiting what the jury heard about his prior felony offense. Carr failed to satisfy the performance prong of *Strickland* on this claim.

---

[6] Between them, Munger and Reedy had more than twenty years of practice experience.

**B. Suppression of Carr's Admission to Possession of Gun**

Carr next argues that trial counsel should have moved to suppress his "un-Mirandized statements [made] while he was subject to custodial interrogation." At issue is Officer Roberts's question: "What are you doing with that gun?" And Carr's answer: "I need to protect myself." The prosecution argued to the jury that the statement was Carr's confession to possessing the firearm. In these postconviction proceedings, Carr argues that counsel breached a material duty by not moving to suppress that statement under the Fifth Amendment of the U.S. Constitution and article 1, section 9 of the Iowa Constitution. *See State v. Miranda*, 672 N.W.2d 753, 761 (Iowa 2003) (finding trial court should have suppressed unwarned statements under *Miranda v. Arizona,* 384 U.S. 436, 479 (1966)).

Carr contends that Munger and Reedy did not have a valid strategy for not moving to suppress his incriminating statement. Indeed, Munger testified that "in retrospect" a motion to suppress "probably should have been done." But in their defense, Munger said he and Reedy were "looking at the big picture" and the five-year sentence for a felon-in-possession conviction was less "impactful" than the consequences of convictions for attempted murder and robbery. Reedy gave a similar explanation:

> The issue on the possession of the gun was not the element that we were going after. We were going after, one, that he did not attempt to kill Officer Roberts, and, two, that the robbery or theft was over, so it would only be a theft rather than a robbery.

In resolving this suppression claim, the postconviction court decided that Carr failed to prove prejudice from counsel's inaction. The court acknowledged the State's use of Carr's admission but decided the record included enough other

evidence that he possessed the gun. The court recounted Officer Roberts's concern that Carr would not take his hand from his pocket when asked to do so. And then the officer saw a gun "flying" through the air after he shoved Carr backwards.[7] After chronicling the "substantial evidence" connecting Carr to the weapon, the court found that without Carr's statement, "the result would not have been any different." We agree that Carr did not satisfy *Strickland*'s prejudice prong on this claim. Given the strong circumstantial evidence pointing to his gun possession, Carr cannot show that suppression of his admission would create a "reasonable probability" of a different outcome. *See State v. Madsen*, 813 N.W.2d 714, 730 (Iowa 2012).

### C. Cumulative Prejudice

Building on his first two ineffective-assistance-of-counsel claims, Carr contends those errors "compounded upon each other" resulting in an unfair trial. He cites *State v. Clay* for the proposition that the cumulative effect of prejudice resulted in a violation of his right to due process and the effective assistance of counsel. *See* 824 N.W.2d 488, 501–02 (Iowa 2012)

In response, the State attacks the "analytical model" in *Clay*, contending that its five-step flow chart applies only to ineffective-assistance-of-counsel claims made on direct appeal because it presumes no record supporting breaches of duty. *See id.* at 501. From there, the State submits that addressing cumulative prejudice based on a presumed breach of duty is a "dead letter" since the amendment of

---

[7] The State also noted in its brief that officers found a magazine for the gun in the trunk of the car that Carr had rented.

Iowa Code section 814.7 prohibits appellate courts from considering ineffective assistance claims on direct appeal.

But we need not address *Clay*'s continuing viability because we find no breach of duty in Carr's severance claim. That leaves only the suppression claim. And our existing case law does not recognize a cumulative prejudicial effect from a single breach of duty. *Id.*; *see McPeek v. State*, No. 22-1870, 2024 WL 2042115, at *4 (Iowa Ct. App. May 8, 2024) (finding "*Clay* provides no path to relief" when court found no breach of duty on one of two ineffective-assistance-of-counsel claims). Thus, Carr cannot prevail on his claim of cumulative prejudice.

### D. Intoxication Defense

In his final push for relief, Carr contends the district court abused its discretion in refusing to consider his belated claim that trial counsel was constitutionally remiss in not mounting an intoxication defense.

At the postconviction hearing, Carr testified that he had "quite a lot" to drink on the morning of the crimes. Carr's counsel, Drew Khouris, questioned Munger and Reedy about not pursuing an intoxication defense in the criminal proceedings. Munger said he did not get the impression from watching the video that Carr was intoxicated and did not consider raising that defense. Reedy testified that he did not believe an intoxication defense would have helped their client:

> He stole a gas can stupidly and had a gun in his possession when he stole it. Both were really dumb moves on his part. If he didn't have the gun with him, it would have been a theft of a $6 or $8 item and he would have got almost nothing. If he didn't steal it and had the gun, he would have gotten five years. . . . It was a dumb move on his part, but it was not because he was intoxicated.

The State objected because neither the original postconviction application nor the amended application included an allegation that counsel was ineffective for not raising that defense. The State also noted that Carr's interrogatory answers for the postconviction case didn't include factual allegations that he was intoxicated at the time of the crime. In response, attorney Khouris said: "I didn't hear about this information until yesterday when Mr. Carr and I went over the entire file and he mentioned this to me." Khouris said they had not yet decided whether to amend the application but asked the court to note the objection and allow him to proceed. The postconviction court reserved ruling on the State's objection.

In his post-hearing briefing, Khouris again did not mention the intoxication defense.[8] Nor did he move to amend the application to include that allegation against trial counsel. In the postconviction ruling, the district court found that Carr's failure to raise this issue in his original or amended application was inappropriate under Iowa Code section 822.8.[9] The court sustained the State's objection and refused to address any issues related to the intoxication defense.

In this appeal, Carr contends that "the district court abused its discretion in refusing to allow a late amendment on this issue." But from our reading of the record, Carr did not ask to amend his application after exploring the intoxication issue for the first time during the postconviction hearing. Attorney Khouris told the postconviction court: "I haven't even decided if I'm going to make an amendment"

---

[8] In its trial brief, the State reiterated its objection to the "untimely"-raised intoxication claim. But Khouris did not discuss that issue in his rebuttal brief either.
[9] Section 822.8 states: "All grounds for relief available to an applicant under this chapter must be raised in the applicant's original, supplemental or amended application. . . ."

but wanted to "get the record done and then decide." Carr does not point us to anywhere in the record that his counsel then sought to amend the application. Thus, error was not preserved on this issue.

But even if the issue were properly presented without a motion to amend the application, the court did not abuse its discretion in declining to entertain this ground for relief floated for the first time at the postconviction hearing. The State was entitled to know the breadth of Carr's allegations as it prepared for the hearing. The court had ordered all amendments to be filed at least forty-five days before that hearing. "There is a legitimate state interest in trial rules procedurally fair to both sides." *State v. Dwinells*, 146 N.W.2d 231, 235 (Iowa 1966). On this record, we find no abuse of discretion.

Finding no merit in Carr's four claims on appeal, we affirm the denial of postconviction relief.

**AFFIRMED.**